IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

KENNETH B. WILLS AND
BOBBIE AKINS,

     Appellants,

v.

RASHIDA WILLS JONES,

     Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-2911

Opinion filed April 27, 2016.

An appeal from the Circuit Court for Leon County.
Karen A. Gievers, Judge.

Michael J. Bauer of The Law Office of Michael J. Bauer, P.A., Tallahassee, for
Appellant.

Mary L. Wakeman of Heuler-Wakeman Law Group, P.L., Tallahassee, for
Appellee.

MAKAR, J.

     In this case, we are called upon to determine whether the trial court erred by

entering a one-year injunction against domestic violence in favor of a mentally ill

woman against her parents, who had been attending to their daughter's mental

health needs for much of her adult life. We conclude that the domestic violence

statutes were not intended to be used in such a manner on the facts presented.

I.

Rashida Wills Jones is a thirty-eight year old woman who suffers from schizoaffective and bipolar disorders; Kenneth B. Wills and Bobbie Akins are her parents. In June 2015, Ms. Jones sought an injunction against her parents to prevent domestic violence, section 741.30, Florida Statutes, alleging they previously harassed her as well as threatened to bring litigation against individuals closely associated with her. The affidavit attached to her petition explained:

> My father, Kenneth Wills, and my mother, Bobbie Akins, will not leave me alone after my repeated requests that they not call or contact me. I am an adult and I need to be left alone by my parents so I can live my life. I do not want them to harass me or professionals that are helping me. Mr. Wills and Ms. Akins went to my doctor's office and threatened the office staff and threatened to sue my doctor's office for testifying at my last Baker Act hearing.

> My parents threatened my case manager, Val Frentz, in court with eternal damnation and they continue to threaten me and harass me with their repeated phone calls. They continue to attempt to seek information about my life through others. Their repeated attempts to be involved in my life causes me great stress and results in my father having me Baker-acted. I want to stay out of mental health facilities and am currently under the FACT program in Leon County, as supervised by my case manager. My medical and psychological providers have said I need to avoid contact with my parents at this time given that my interactions with them lead to negative results for me and my ability to take care of my own needs. I agree.

The trial court found these allegations were insufficient to establish an immediate and present danger of domestic violence, but it set a date for an evidentiary hearing to consider the matter in more depth. Ms. Jones' parents responded by arguing that

their daughter filed the petition "as a result of a recent Baker Act proceeding" they initiated against her. See § 394.467(1), (1)(a)2.a., Fla. Stat. (2015) (providing for "involuntary inpatient placement for treatment upon a finding of the court by clear and convincing evidence" that a person has a mental illness that, among other possibilities, "poses a real and present threat of substantial harm to his or her well-being.") (verbified as "Baker Acted"). They further alleged that after Ms. Jones was awarded a large sum of money in damages from a probate proceeding, her attorney "has attempted to separate the petitioner from [them]."

At the hearing, Ms. Jones testified that she sought an injunction against her parents because she felt intimidated and harassed by them, particularly when she doesn't do what they say because she's made to feel she's doing something wrong and against the family. She is married (though apparently in the process of divorce) and recently went to her daughter's high school graduation in Texas, which spawned some friction because her parents wanted to attend without her husband's presence. She was recently Baker Acted, but was released and is part of a community based treatment program for adults with mental illnesses. The psychological team and her case manager recommended she not have contact with her parents because it has a detrimental impact on her mental health. She says her parents show up where she goes and tell others not to be involved with her because she's sick.

3

Case manager Val Frentz testified that she evaluated Ms. Jones two years ago to determine her mental capacity and whether her parents needed to be guardians. In April 2015, her parents wanted to initiate a Baker Act proceeding, which was the correct decision to get her back on track. But Frentz testified that the parents were problematic, should avoid contact with her, and were not needed as guardians. The parents were confrontational and caused a scene at the hospital, which disrupts the stability their daughter needs. Frentz's professional view was that the problems with the daughter's mental health stemmed from her parent's behaviors.

Ms. Akins, the mom, testified that her daughter has had ongoing mental health issues since late 1998: schizoaffective and bipolar disorders. She had been Baker Acted by her sister in New Jersey, by the police, and by her parents. After January 2015, when Ms. Jones got out of jail, Ms. Akins noticed her daughter didn't look well and was not making sense. She wanted to initiate a Baker Act proceeding against her in April 2015 when she noticed her daughter was talking nonsense, her hygiene needed care, her house was filthy, and she was hyperactive. Her daughter has never told her she wanted no contact with her. After the Baker Act proceedings were initiated, Ms. Akins checked on the house, which was such a mess that she had to clean it under threat of eviction from the landlord. As long as her daughter is taking her medicine, Ms. Akins doesn't interfere with her daughter,

4

whom she loves. She is happy her daughter is getting treatment, but the case manager, Ms. Frentz, was untruthful in her conclusions about her daughter.

Finally, Kenneth Wills, the dad, testified that he did not harass his daughter and, instead, sought guardianship because of his daughter's mental health. During early 2015, she was in trouble and called him after she was arrested, seeking his help to get out of jail because no one else would assist her. She was kept in jail to monitor her mental condition and later he posted bond for her release. She was re-arrested in February for failure to appear. In late April, when she appeared upset and said she'd been fighting with the devil all night, he and his wife decided to get her help and initiated a Baker Act proceeding. After a case plan was put in place, and Ms. Jones was taking her medication, she appeared to be doing better; there was no problem with her contact with her parents, and no one, including Ms. Jones, ever told them not to have contact with her. He and his wife love their daughter, didn't commit any acts of domestic violence against her, and didn't stalk, harass, or intimidate her.

In its ruling, the trial court opined that Ms. Jones, with her mental health situation, was in a unique situation relative to what the injunction statutes were intended to be focused on; the trial court nonetheless ruled that Ms. Jones had met her burden thereby entitling her to an injunction. The court expressed concerned about the quarrelsome conduct between Ms. Akins and Ms. Frentz as they left the

courtroom following a prior guardianship proceeding years earlier, and about the parents going to the hospital to confront health care providers and challenge their viewpoints, which "was an overt act." Because such actions were inconsistent with "peace and tranquility of the community," the injunction ordered no contact with Ms. Jones' health care providers as well. This appeal follows.

## II.

The legal sufficiency of the domestic violence injunction at issue is the centerpiece of this appeal, the parents saying it was unlawful, a question we review de novo. Achurra v. Achurra, 80 So. 3d 1080, 1082 (Fla. 1st DCA 2012) ("Our review of the trial court's conclusion of law that the petitioner is entitled to a final judgment of injunction against domestic violence is de novo."). They argue that an injunction against domestic violence is impermissible absent proof of malicious harassment that includes a threat of imminent violence and cannot be based on "mere uncivil behavior that causes distress or annoyance." Their point is well-taken. See Young v. Young, 96 So. 3d 478, 479 (Fla. 1st DCA 2012) ("An injunction against domestic violence requires malicious harassment that consists at the very least of some threat of imminent violence, which excludes mere uncivil behavior that causes distress or annoyance.").

A significant part of Ms. Jones' argument is that her parents' efforts to have

her Baker Acted constituted harassment.[1] Yet our Court has said that even "[u]nfounded reports to authorities or requests for judicial relief, even if repeated or for malicious purposes, do not support the entry of an injunction against domestic or other violence." Olin v. Roberts, 42 So. 3d 841, 842 (Fla. 1st DCA 2010) (holding that filing of reports and complaints to law enforcement agencies does not constitute harassment). Not all reports are valid; but many are for valid reasons. Thus, it bears noting that the statutory definition of harassment is "engag[ing] in a course of conduct directed at a specific person which causes substantial emotional distress to that person *and serves no legitimate purpose*." § 784.048(1)(a), Fla. Stat. (2015) (emphasis added). Here, no one questions that Ms. Jones is in need of mental health services and that her parents have attempted to assist her in obtaining such services for much of her adult life, sometimes against her desires; indeed, Ms. Jones' own expert acknowledged that her parents' behavior served a legitimate purpose by initiating the April 2015 Baker Act proceedings against her. As such, an injunction against sometimes overbearing parents who, as the trial judge held here, have "done an amazing job being on

---

[1] The definition of "domestic violence" includes "stalking," section 741.28, Florida Statutes, which is defined elsewhere as "willfully, maliciously, and repeatedly . . . harass[ing] . . . another person." See § 784.048(3), Fla. Stat. Harassment is "engag[ing] in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose." Id. § 784.048(1)(a). A "course of conduct" is defined as a "series of acts over a period of time, however short, which evidences a continuity of purpose." Id. § 784.048(1)(b).

guard over this young lady who is now 37 years old, for all those years wanting and doing what they could to protect Ms. Jones from situations," cannot be explained on the basis that their actions were without any legitimate purpose.

Second, the medical testimony supports that the parents have responsibility for some of their daughter's mental health issues; but the evidence that purports to establish the statutory basis for an injunction against domestic violence falls short of what courts have required under the statute. Here, the acts of the parents upon which the injunction is based are: going to Ms. Jones's doctor's office to threaten litigation arising from the Baker Act hearing; creating a "scene" and saying the case manager was subject to "eternal damnation;" repeated unwanted phone calls to their daughter; and seeking information about her life from others. These acts fail to satisfy the statutory requirement that they support an objectively reasonable fear of the type of malicious behavior the statute was designed to shield. McMath v. Biernacki, 776 So. 2d 1039, 1040 (Fla. 1st DCA 2001) ("For determining whether an incident creates substantial emotional distress, courts must use a reasonable person standard, not a subjective standard."). Instead, they amount to the type of uncivil conduct that while causing distress and annoyance is legally insufficient to justify intervention by the court system (along with the collateral consequences of injunctions against domestic violence). See Randolph v. Rich, 58 So. 3d 290, 292 (Fla. 1st DCA 2011) ("the law requires more than general

8

relationship problems and uncivil behavior to support the issuance of an injunction"); see also Jones v. Jackson, 67 So. 3d 1203, 1203-04 (Fla. 2d DCA 2011) (receipt of allegedly intimidating phone calls and text messages "would not have caused a reasonable person substantial emotional distress"); Polanco v. Cordeiro, 67 So. 3d 235, 238 (Fla. 2d DCA 2010) (Villanti, J., concurring) (injunctions "are to be used only to rectify the egregious conduct outlined in the statutes themselves. . . . These statutory provisions are not a panacea to be used to cure all social ills. In fact, nowhere in the statutory catalog of improper behavior is there a provision for court-ordered relief against uncivil behavior . . . .") (citations omitted); Giallanza v. Giallanza, 787 So. 2d 162, 165 (Fla. 2d DCA 2001) ("General harassment does not constitute 'domestic violence' under the statute.").

That the quantum of evidence presented does not establish a legal basis for an injunction against domestic violence does not mean that injunctive relief is precluded for all time; one act of violence or the imminent potential for such an act can dramatically change the need for judicial intervention. We recognize that Ms. Jones' medical professionals agree that the parents need to keep their distance so Ms. Jones has breathing space to progress in her programs. But there are other remedies short of an injunction against domestic violence to deal with obstreperous intermeddlers such as trespass warnings; the medical prescription pad should

include such remedies with the domestic injunction statute remaining available for the egregious cases.

REVERSED and REMANDED.

WETHERELL and WINOKUR, JJ., CONCUR.