# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-293
_____

TERRANCE J. PICKETT,

Appellant,

v.

HOLLY C. COPELAND,

Appellee.

_____

On appeal from the Circuit Court for Escambia County.
Jan Shackelford, Judge.

January 17, 2018

JAY, J.

Terrance J. Pickett appeals the trial court's Final Judgment of Injunction for Protection Against Stalking. Although we disagree that Mr. Pickett was deprived of due process during the hearing, we agree with Mr. Pickett that the evidence was legally insufficient to support the issuance of the injunction against him. Consequently, we reverse.

Mr. Pickett claims that competent, substantial evidence did not support the trial court's imposition of the permanent injunction against stalking. A trial court has broad discretion to grant an injunction, and we review an order imposing a permanent injunction for a clear abuse of that discretion. *Noe v. Noe*, 217 So. 3d 196, 199 (Fla. 1st DCA 2017); *Weisberg v. Albert*, 123 So. 3d 663,

664 (Fla. 4th DCA 2013). But the question of whether the evidence is legally sufficient to justify imposing an injunction is a question of law that we review de novo. *Wills v. Jones*, 213 So. 3d 982, 984 (Fla. 1st DCA 2016).

Section 784.0485(1), Florida Statutes (2016), "create[s] a cause of action for an injunction for protection against stalking." The "petition for an injunction for protection against stalking may be filed in the circuit where the petitioner currently or temporarily resides, where the respondent resides, or where the stalking occurred." § 784.0485(1)(f), Fla. Stat. As defined in section 784.048(2), Florida Statutes (2016), stalking occurs when a person "willfully, maliciously, *and repeatedly* follows, harasses, or cyberstalks another person[.]" (Emphasis added.) "Harass" is defined in section 784.048(1)(a) to mean "engag[ing] in a *course of conduct* directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose." (Emphasis added.) In its turn, "course of conduct" is defined as "a *pattern of conduct* composed of *a series of acts* over a period of time, however short, which evidences *a continuity* of purpose." § 784.048(1)(b), Fla. Stat. (emphasis added).

"Thus, by its statutory definition, stalking requires proof of repeated acts." *Lukacs v. Luton*, 982 So. 2d 1217, 1219 (Fla. 1st DCA 2008); *see also Power v. Boyle*, 60 So. 3d 496, 498 (Fla. 1st DCA 2011) ("Stalking has been interpreted to mean 'repeated acts of following or harassment.'") (quoting *Lukacs*, 982 So. 2d at 1219)). Stated differently, repeated acts are required for "*one act of stalking.*" *Lukacs*, 982 So. 2d at 1219 (emphasis in the original); *see also Packal v. Johnson*, 226 So. 3d 337 (Fla. 5th DCA 2017) (reversing permanent injunction for protection against stalking violence because the evidence did not support a finding of repeat harassment); *Carter v. Malken*, 207 So. 3d 891, 894 (Fla. 4th DCA 2017) ("A minimum of two incidents of harassment are required to establish stalking.").

In contrast, several courts have held that a stalking injunction requires proof of two or more separate incidences of "stalking." *See, e.g.*, *Burns v. Bockorick*, 220 So. 3d 438, 440 (Fla. 4th DCA 2017) ("'In order to be entitled to an injunction for stalking, the petitioner must allege and prove two separate instances of stalking.'")

2

(quoting *David v. Schack*, 192 So. 3d 625, 627-28 (Fla. 4th DCA 2016)); *Klemple v. Gagliano*, 197 So. 3d 1283, 1285 (Fla. 4th DCA 2016) (same); *Richards v. Gonzalez*, 178 So. 3d 451, 453 (Fla. 3d DCA 2015) (referring to "*[e]ach* incident of stalking") (emphasis in original); *Touhey v. Seda*, 133 So. 3d 1203, 1204 (Fla. 2d DCA 2014) (requiring "each incident of stalking" to be proved). Apparently, this two-incident requirement was adopted based upon "guidance" from the repeat violence statute—section 784.046, Florida Statutes—"which defines repeat violence as '*two incidents* of violence or stalking committed by the respondent, one of which must have been within 6 months of the filing of the petition, which are directed against the petitioner or the petitioner's immediate family member.'" *Wyandt v. Voccio*, 148 So. 3d 543, 544 (Fla. 2d DCA 2014) (emphasis added); *see also David v. Textor*, 189 So. 3d 871, 874-75 (Fla. 4th DCA 2016) ("Section 784.0485, Florida Statutes (2014), allows an injunction against stalking, including cyberstalking. The statute must be read in conjunction with section 784.046(1)(b), Florida Statutes (2014), which requires at least two incidences of stalking to obtain an injunction."); *Leach v. Kersey*, 162 So. 3d 1104, 1106 (Fla. 2d DCA 2015) (holding that the stalking "statute is analyzed with guidance from the statute governing injunctions against repeat violence, section 784.046"); *Touhey*, 133 So. 3d at 1203 ("Given the [stalking] statute's recent enaction, support for our holding comes from cases analyzing allegations of stalking in the context of section 784.046, which applies to injunctions for protection against repeat violence, sexual violence, and dating violence.") (footnote omitted).

However, nowhere in the definitions of section 784.048 is stalking defined as a multiple of itself. Stalking is defined simply as "willfully, maliciously, and repeatedly" following, harassing, or cyberstalking another person—not *repeatedly stalking* another person. § 784.048(2), Fla. Stat. Equally important, section 784.0485 makes no reference to the provisions of the repeat violence statute; does not mandate "guidance" from the repeat violence provisions; and, independent of the requirements of section 784.046, creates a "cause of action for an injunction for protection against stalking." § 784.0485(1), Fla. Stat.; *see* M. Kimberly Martyn, *Representing Battered Spouses, Florida Dissolution of Marriage*, §21.78 (Fla. Bar CLE 12th ed. 2015) ("Effective October 1, 2012, *a fifth type of protective injunction*

3

exists for protection against stalking. F.S. 784.0485(1). The availability of this injunction enables victims of stalking, including cyberstalking, who do not qualify for domestic violence injunctions, *to seek relief without the necessity of proving the two separate stalking offenses that are required in repeat violence injunction proceedings*.") (emphasis added).[1]  Moreover, if a stalking

[1] In concluding that support for its holding came from analyzing allegations of stalking in the context of section 784.046, the Second District in *Touhey* drew inspiration from the staff analysis of Senate Bill 950—the precursor to chapter 2012-153, §§ 3, 6, Laws of Fla. (2012)—which created the cause of action for an injunction against stalking. 133 So. 3d 1203 n.2. The analysis stated: "The 'statutory cause of action for an injunction for protection against stalking . . . is similar to the current cause[] of action for [an] injunction[] against repeat violence.'" *Id.* (quoting Fla. S. Crim. Justice Comm., SB 950 (2012), Staff Analysis (Jan. 24, 2012)). We are not persuaded by the referenced staff analysis to abandon our view that the term "stalking" as used in section 784.0485 should be read in the singular. First, we are more persuaded by the general rule "that legislative staff analyses are not determinative of legislative intent, but are only 'one touchstone of the collective legislative will[]' . . . [and] where the [statutory] language is clear, courts need no other aids for determining legislative intent." *Am. Home Assur. Co. v. Plaza Materials Corp.*, 908 So. 2d 360, 375-76 (Fla. 2005) (Cantero, J., dissenting) (citations omitted). The language is clear in section 784.0485; the words of the statute are sufficient.

Second, our reading of the full staff analysis only serves to confirm our present conclusion, to the extent that the analysis expressly recognized the need for an injunction specifically directed to the act of stalking because, up to that point, as it was acknowledged in the analysis, a person could only pursue injunctive relief through either the domestic violence injunction statute or the repeat violence injunction statute. And, as the staff analysis went on to point out, the pleading requirements of each of those statutes are more onerous, noting, in particular, that the repeat violence injunction statute requires "two incidents of stalking." Fla. S. Crim. Justice Comm., SB 950 (2012), Staff Analysis at 4 (Jan. 24, 2012). That distinction is at odds with the

injunction requires two instances of "stalking," then at least *four* prohibited events must be proved by the person seeking the injunction—because a single "stalking" offense requires *repeated* acts of malicious following, and/or harassment, and/or cyberstalking. *See Lukacs*, 982 So. 2d at 1220 ("To adopt the view of Appellant would lead to the absurd result of requiring stalking victims to show that they *twice* suffered from *repeated* harassment or following before obtaining a protective injunction. Were we to adopt such an interpretation, Appellant could have threatened or followed Appellee *four* times before the circuit court could issue a protective injunction.") (emphasis in the original). Therefore, based on the statutory language of section 784.0485, and the definitions set forth in section 784.048, we hold that the injunction provisions of section 784.0485 only require the petitioner to prove a single incident of stalking.

Turning to the facts of this case, it was incumbent on Ms. Copeland to prove stalking by competent, substantial evidence. *Thoma v. O'Neal*, 180 So. 3d 1157, 1159 (Fla. 4th DCA 2015) (citing *McMath v. Biernacki*, 776 So. 2d 1039, 1041 (Fla. 1st DCA 2001)). As is so often true in injunction cases, the parties appeared below without counsel. The trial court conscientiously questioned each of the parties, in turn. There was scant relevant evidence presented, and the parties' testimony, at best, was confusing and convoluted. We are sensitive to the difficulties faced by the trial court in teasing out a thread of truth from a jumbled patchwork of conflicting narrative. But, after having carefully reviewed the record ourselves—mindful that we are not the factfinder—we are compelled to conclude that the evidence was neither competent nor substantial to carry Ms. Copeland's burden.

While there was evidence that Mr. Pickett followed Ms. Copeland from the Murphy gas station on Thanksgiving Day in 2016, he did so because there was an outstanding warrant for Ms.

---

later language quoted above and relied on in *Touhey*, that a cause of action for an injunction against stalking is "similar" to a cause of action for an injunction against repeat violence. Regardless, we decline to define our reasoning in this case by the Senate staff analysis.

Copeland's arrest for violating the injunction he had obtained against her, and while he was following her, it is undisputed that he was talking to the police. That was, at most, a single act of following.[2] Furthermore, though Ms. Copeland accused Mr. Pickett of driving past her house on multiple occasions—presumably to prove harassment—the evidence only suggested a single incident of his passing by, which falls short of a malicious "course of conduct" serving "no legitimate purpose." § 784.048(1)(a), (b) & (2), Fla. Stat.; *see Leach*, 162 So. 3d at 1106 (reversing injunction and holding Leach's several messages to Kersey by phone, through friends, and on social media, after she

_____

[2] It is clear that the trial court was troubled by the fact that when law enforcement caused Ms. Copeland to pull over into a parking lot, Mr. Pickett got out of his vehicle and used his cell phone to videotape her arrest. However, for purposes of the definition of harassment, "course of conduct" "does not include constitutionally protected activity[.]" § 784.048(1)(b), Fla. Stat. (2016). Even though we recognize that this protective language will not necessarily provide immunity for every instance where an individual videotapes an arrest—because an individual's actions may go beyond the scope of the constitutional protections—there is a First Amendment right to videotape police officers while they are conducting their official duties in public:

> Every Circuit Court of Appeals to address this issue (First, Fifth, Seventh, Ninth, and Eleventh) has held that there is a First Amendment right to record police activity in public. *See Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017); *Gericke v. Begin*, 753 F.3d 1 (1st Cir. 2014); *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012); *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011); *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000); *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995). Today we join this growing consensus. Simply put, the First Amendment protects the act of photographing, filming, or otherwise recording police officers conducting their official duties in public.

*Fields v. City of Philadelphia*, 862 F.3d 353, 355-56 (3d Cir. 2017).

6

learned of an eighteen-month affair between Kersey and Leach's husband, could not be found to serve "'no legitimate purpose'"); *Touhey*, 133 So. 3d at 1204 (holding record lacked a sufficient basis for the circuit court's finding that Seda proved "inappropriate contact" constituting stalking, where the testimony did not establish maliciousness or that a reasonable person would have suffered "substantial emotional distress" as a result of Touhey's behavior).

As a result, we hold there was no competent, substantial evidence to support the imposition of an injunction for protection against stalking. Consequently, the final judgment is reversed.

REVERSED.

LEWIS and RAY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Jason Cromey of Cromey Law, P.A., Pensacola, for Appellant.

No appearance for Appellee.

7