# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-822

_____

SAJED KHAN,

    Appellant,

    v.

LAURA DEUTSCHMAN,

    Appellee.

_____

On appeal from the Circuit Court for Leon County.
Jonathan Sjostrom, Judge.

October 11, 2019

KETCHEL, TERRANCE R., ASSOCIATE JUDGE.

Sajed Khan challenges the lower court's final judgment granting Laura Deutschman a dating violence injunction against him. For the reasons set forth below, we affirm.

It is well established that a trial court has broad discretion to enter an injunction, and a decision based on that discretion will not be overturned absent a finding that the court abused that discretion. *Pickett v. Copeland*, 236 So. 3d 1142, 1143–44 (Fla. 1st DCA 2018). "It [is] the responsibility of the trial court to determine the credibility of the witnesses and to resolve the conflicts in evidence." *Jeffries v. Jeffries*, 133 So. 3d 1243, 1244 (Fla. 1st DCA 2014) (citing *Disston v. Hanson,* 116 So. 3d 612 (Fla. 5th DCA 2013)). "It is well-established that the appellate court does not re-

weigh the evidence or the credibility of the witnesses." *Lahodik v. Lahodik*, 696 So. 2d 533, 535 (Fla. 1st DCA 2007).

As is often the case with pro se litigants in domestic violence injunction hearings, the testimony of the parties in this case was sometimes contradictory, and even in direct dispute on several crucial matters. The parties engaged in an eight- to eleven-month romantic relationship that by all accounts was a significant relationship. The parties stayed at each other's homes occasionally during their relationship, lived together for short periods of time, and traveled together. On the other hand, both parties acknowledged that the relationship was rocky and was often "on again, off again."

Of significance to this case, in the middle of November 2017, the two broke up, and a few days later, had a rather public falling out when Appellant saw Appellee in the arms of another man at a local bar. Appellee yelled at Appellant because she felt that Appellant followed her to the bar. The fight stretched into the early hours of the next morning via a string of mostly unanswered text messages.

Importantly, Appellee ended the fight by telling Appellant that she never wanted to talk to him again, and she immediately blocked him from contacting her by phone and social media. Appellee was unequivocal at this time that she wanted no further contact and that this was permanent. She made no further contact with Appellant, even in the face of repeated efforts by him to communicate. Appellant claims that Appellee called him one time following this no contact request, on a blocked phone number, and spoke with him for forty-five minutes, a claim that Appellee vigorously denied.

Appellee also testified that Appellant struck her in the face a year earlier, pointing to the volatile nature of the relationship, an accusation that the Appellant denied.

Over the next few months, in an apparent attempt to reconcile, Appellant continued to try to contact Appellee via several texts, a formal letter, flowers, and on at least one occasion, a phone call, none of which were responded to by Appellee. On the contrary, during this time, Appellee attempted to stop Appellant

2

from contacting her by having her attorney send Appellant a cease and desist letter, which Appellant received. Ultimately, Appellee contacted the police to assist her in having Appellant stop contacting her. When this was not successful, Appellee finally filed for an injunction to prevent dating violence.

The trial court commented that it was flabbergasted by Appellant's failure to heed the attorney's formal cease and desist letter, and the court concluded that it considered the continued communications following clear directions to stop as "hectoring." Based on these facts the trial court entered a final injunction on the Petition for Protection Against Dating Violence for a period of one year.

Appellant raises "the question of whether the evidence is legally sufficient to justify imposing an injunction [which] is a question of law that we review de novo." *Pickett*, 236 So. 3d at 1144 (citing *Wills v. Jones*, 213 So. 3d 982, 984 (Fla. 1st DCA 2016)).

The dating violence injunction permits any person "who is the victim of dating violence and has reasonable cause to believe he or she is in imminent danger of becoming the victim of another act of dating violence" may petition the circuit court for an injunction to prevent such violence. § 784.046(2)(b), Fla. Stat. Dating violence is "any assault, battery, aggravated battery, sexual assault, stalking, aggravated stalking, kidnapping or false imprisonment, or any criminal offense resulting in physical injury or death, by a person against another person" between individuals who have had or currently have a significant, romantic relationship. § 784.046(1)(a), (d). There is no dispute that the parties were engaged in a continuing and significant relationship of a romantic or intimate nature. Because the evidence presented by the parties could only possibly meet the requirements of the dating violence element of stalking, our analysis will be confined to a review of the requirements for a stalking injunction only.

The stalking element is found not only in the dating violence injunctions, but also the domestic violence injunctions, the repeat violence injunctions, and more recently the standalone stalking

3

injunction that was created by the Legislature.* In each of these types of injunctions the legal analysis for the application of the stalking requirements is identical and in fact interchangeable although other requirements of the various injunctions are substantially different.

"Stalking" is when one "willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another." § 784.048(2), Fla. Stat. "'Harass' means to engage in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose," section 784.048(1)(a), and cyberstalking is harassing through electronic communication, *see* section 784.048(1)(d).

"Substantial emotional distress" is an objective standard, *Bouters v. State*, 659 So. 2d 235, 237 (Fla. 1995), and whether a person experiences substantial emotional distress is determined by considering the totality of the circumstances. *See Leach v. Kersey*, 162 So. 3d 1104, 1106 (Fla. 1st DCA 2015) ("A reasonable woman who had an eighteen month affair with another woman's husband might well expect to hear the scorn of an angry wife."); *Biggs v. Elliot,* 707 So. 2d 1202 (Fla. 4th DCA 1998) (following and repeatedly telephoning the victim did constitute stalking within the statutory definition of section 784.048, Florida Statutes (1995); and stating "whether the conduct meets the statutory requirement is a question of fact for the trier of fact").

A dating violence injunction requires "violence"—and most of the acts the Legislature defined as "violence" are violent as that term is used in ordinary parlance. *See* § 784.046(1)(a), (d), Fla. Stat. (requiring "violence" and defining "violence" as "any assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, or false imprisonment, or any criminal offense resulting in physical injury or death"); *Branson v. Rodriguez-Linares,* 143 So. 3d 1070, 1072-73 (Fla. 2d DCA 2014) (acknowledging the same under the related

---

* The stalking element was added to the definition of Repeat Violence in 1995 (Ch. 95-195. Section 13, Laws of Fla.), and the standalone Stalking Injunction was enacted in 2012 (Ch. 2012, Section 3, Laws of Fla.).

and similarly defined domestic violence injunction statute). However, the plain language of the dating violence statute includes "stalking" within the "violence" definition and prohibition. *See* § 784.046(1)(a), Fla. Stat.; *Branson,* 143 So. 3d at 1072-73.

Stalking only requires "willfully, maliciously, and repeatedly follow[ing], harass[ing], or cyberstalk[ing] another person." § 784.048(2), Fla. Stat. "As such, it is not a direct act of violence. Instead, it is included among actionable violent offenses because of its documented propensity to precede violence. Its inclusion in the definition of 'violence' in both statutes thus causes the statutory definition to diverge considerably from the colloquial meaning of the word. For purposes of domestic and nondomestic violence statutes, stalking is violence." Steven Scott Stephens, *Injunction For Protection—Stalking*, *in* 23 Fla. Practice, Fla. Family Law § 14:14 (West 2018) (citing *Branson,* 143 So. 3d at 1072-1073); *see also* § 784.0485(1), Fla. Stat. "The stalking statute was designed to protect women from being harassed by ex-husbands or former boyfriends, by ensuring that victims did not have to be injured or threatened with death before stopping a stalker's harassment." *Lopez v. Lopez,* 922 So. 2d 408, 410 (Fla. 4th DCA 2006) (citing *Curry v State,* 811 So. 2d 736, 741 (Fla. 4th DCA 2002)).

In this case, the trial judge found that the elements necessary to meet the statutory definition of stalking had been met. First, while this was clearly an on again, off again romance, on November 16, Appellee unequivocally informed Appellant via text message that she wanted no further contact with him and asked him to delete her numbers and email. She further stated that "this is permanent and no contact." Thereafter, in spite of Appellee's insistence that she made no further attempts at contact with Appellant, Appellant continued to contact Appellee. Appellant emailed Appellee once on November 22 and 29, three times on December 8, once on December 15 and 17, and one last time on January 17. Of particular importance to the trial judge, Appellee sent a formal cease and desist letter from her attorney one week before the final email. And finally, following the last email Appellant had flowers and a card delivered to Appellee on the same day that Appellee had a Sheriff's Deputy call Appellant and tell

5

Appellant to stop communicating with Appellee. Immediately thereafter, Appellee filed the Petition for Protection Against Dating Violence. As a result of these unwanted, continued contacts by Appellant, Appellee began suffering from anxiety and panic attacks and ultimately sought the assistance of a therapist to counter Appellant's unwanted behavior.

The trial judge specifically found that the email on November 22 was threatening and that some of the comments contained in the emails on the 29th and 8th were hectoring. But most importantly, in spite of Appellee taking formal legal action by way of a cease and desist letter from an attorney as well as having the Sheriff contact Appellant, Appellant continued to repeatedly contact Appellee improperly and without good cause, and the trial judge found that this behavior met the definition of malicious harassment. Malicious behavior goes beyond intent to cause injury to include behavior that is "without just cause or excuse". *See Malicious*, Black's Law Dictionary (10th ed. 2014) (defining "malicious" as "[s]ubstantially certain to cause injury" or "[w]ithout just cause or excuse").

Considering the evidence in the light most favorable to Appellee, *Mitchell v. Brogden*, 249 So. 3d 781 (Fla. 1st DCA 2018), we find that the evidence is legally sufficient to support entry of the dating violence injunction based upon a finding of stalking. We therefore affirm the circuit court's grant of the dating violence injunction for a period of one year.

B.L. THOMAS and WINOKUR, JJ., concur.

---

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

---

6

Mark V. Murray, Tallahassee, and Kevin Robert Alvarez, Tallahassee, for Appellant.

Thomas J. Schulte, Jr. of Ausley McMullen, Tallahassee, for Appellee.