FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D2023-2529
_____

MATTHEW R. HOOVER,

    Appellant,

    v.

CATIA PEAK, o/b/o C.P., a Minor,

    Appellee.

_____

On appeal from the Circuit Court for Okaloosa County.
William F. Stone, Judge.


August 7, 2024


WINOKUR, J.

    Matthew R. Hoover appeals the trial court's final judgment granting Catia Peak a permanent injunction for stalking against him. We reverse because the record does not support the imposition of such an injunction.

I

    On Independence Day, 2023, Hoover aimed a Roman candle firework at several children present in his neighborhood. Peak's daughter, C.P., was one of those children. C.P. had her back turned to Hoover when the firework went off, and she suffered a minor injury to her thigh.

Peak reported the incident to the Department of Children and Families, which led to Hoover's arrest for child abuse. Hoover was also arrested for a separate domestic incident with his now estranged wife Mandelin Hoover. The court granted Mandelin Hoover a domestic violence injunction against Hoover with a no-contact provision.

Then, in August 2023, Hoover and his ex-wife—not Mandelin Hoover—attended their daughter's ninth-grade orientation at Crestview High School. C.P. was also a ninth-grader at Crestview High School. Thus, Peak, her husband, C.P., and Mandelin Hoover (Peak's purported best friend) also attended the orientation. While at the orientation, Peak and Hoover crossed paths on four occasions. Peak believed that Hoover understood his criminal case for child abuse due to the fireworks incident to also include a no-contact order as to C.P. In fact, no such provision existed.

Peak sought out the school police deputy to inform him that Hoover was on the premises and that he should be removed. At the same time, Hoover turned into the same hallway but after seeing Peak's family, he walked away. Based on the four encounters at orientation, Peak filed the underlying petition for an injunction for stalking against Hoover.

The trial court held a hearing, where it heard from Peak, her husband, Mandelin Hoover, and Hoover's ex-wife. C.P. did not testify. The court also denied Hoover's request to allow his daughter to testify. At the conclusion of the hearing, the trial court found that Peak satisfied her burden of showing that a reasonable person would have been placed in substantial emotional distress by Hoover's actions and granted the permanent injunction final judgment. Hoover appeals.

II

We review the trial court's grant of a permanent injunction for abuse of discretion. *See Pickett v. Copeland*, 236 So. 3d 1142, 1143–44 (Fla. 1st DCA 2018). But we review the sufficiency of the evidence for such an injunction de novo. *See id.* at 1144; *Brennan v. Syfrett*, 369 So. 3d 320, 323 (Fla. 1st DCA 2023).

2

Section 784.0485(1), Florida Statutes, creates a civil cause of action for injunctive relief from stalking. Paragraph (6)(a) further provides that "[u]pon notice and hearing, when it appears to the court that the petitioner is the victim of *stalking*, the court may grant such relief as the court deems proper . . . ." § 784.0485(6)(a), Fla. Stat. (emphasis supplied). Stalking occurs when a person "willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person[.]" § 784.048(2), Fla. Stat.

To establish a showing of "stalking" under the statutes, a petitioner must show evidence of "repeated acts" of "following, harassment, or cyberstalking." *Pickett*, 236 So. 3d at 1144 (quoting *Lukacs v. Luton*, 982 So. 2d 1217, 1219 (Fla. 1st DCA 2008)). Moreover, competent, substantial evidence must be present in the record to support a finding that a "reasonable person" suffered from emotional distress due to the stalking. *See Pickett*, 236 So. 3d at 1146 (noting that a petitioner must "prove stalking by competent, substantial evidence." (citation omitted)); *Brennan*, 369 So. 3d at 324 (noting that "courts have repeatedly reversed injunctions where a reasonable person would not have suffered emotional distress from the asserted conduct." (citation omitted)); *Venn v. Fowlkes*, 257 So. 3d 622, 624 (Fla. 1st DCA 2018) (reversing a stalking injunction because the petitioner "did not sufficiently establish his case that [the respondent]'s conduct caused him substantial emotional distress[]").

Here, there was neither evidence of harassment nor following—much less evidence of "repeated acts" of such actions, that would support an injunction for stalking.[1] We address each in turn.

A

"'Harass' means to engage in a course of conduct[2] directed at a specific person which causes substantial emotional distress to

---

[1] We do not discuss whether cyberstalking occurred given that the allegations presented were the result of physical interactions.

[2] "'Course of conduct' means a pattern of conduct composed of a series of acts over a period of time, however short, which evidences a continuity of purpose. The term does not include

3

that person and serves no legitimate purpose." § 784.048(1)(a), Fla. Stat.

In this case, Hoover attended his daughter's Crestview High School orientation, where parents were to "walk the schedule" of their children. The Peak family and Mandelin Hoover attended the orientation with C.P. Peak, her husband, and Mandelin Hoover testified that they saw Hoover four times during the orientation:

1.      First, near room 501. Hoover was walking toward what was likely room 514 when he allegedly turned back, saw Peak's group, and kept walking.

2.      Second, inside room 514. Hoover was in the room (the computer lab) when Peak's family entered the room, saw Hoover, and then they—the family—left the room. Hoover's ex-wife stated that when they saw the Peaks "pop" into room 514, they—the Hoover "entourage"—decided to leave to avoid any issues with Mandelin Hoover, who maintained a no-contact order against Hoover.

3.      Third, along the room 501 hallway. Peak's family was next to room 501 after they walked out of room 514 and shortly thereafter, Hoover walked towards them in the hallway from 514 to 501—which was the direction in which Hoover's daughter's math class was.

4.      Last, near the "Media Center." Peak's family was near the media center speaking with the school police officer about Hoover being at the school when he turned a corner, saw them, and turned around to walk away.

All four encounters—Peak argued—were evidence of "stalking." Peak's main contention was that C.P. suffered emotional distress every time she came into contact with Hoover. Thus, Peak claimed that Hoover was "harassing" C.P. and the family. *See* § 784.048(1)(a), Fla. Stat. (defining "harass" as engaging in "a course of conduct directed at a specific person which

---

constitutionally protected activity such as picketing or other organized protests." § 784.048(1)(b), Fla. Stat.

causes substantial emotional distress to that person and serves no legitimate purpose[]”).While Peak alleged in the petition that C.P. asked “to start attending therapy to cope with the nightmares and him showing up and following her,” no evidence of the alleged therapy was presented at the injunction hearing. Nor was there any evidence that a reasonable person in C.P.’s position would have suffered “substantial emotional distress.” No evidence of any other dispute other than the firework incident appears in the record that would support such a finding.

Because no competent, substantial evidence is present in the record that Hoover “repeatedly harassed” C.P. or her family while at the Crestview High School orientation, we turn to whether Hoover “repeatedly followed” Peak’s family. *See* § 784.048(2), Fla. Stat.

B

In the petition, Peak alleged that Hoover “followed” C.P. during the orientation and caused her distress. But as discussed, Peak must have shown that Hoover “repeatedly followed” C.P. for the injunction to be valid. *See Pickett*, 236 So. 3d at 1144 (citing *Lukacs*, 982 So. 2d at 1219). Peak provided no instances of C.P. being “followed” by Hoover.

Unlike harassment, “following” is not defined in the statute. Therefore, we apply its ordinary meaning. *See State v. Nichols*, 892 So. 2d 1221, 1227 (Fla. 1st DCA 2005). To follow someone is to “move behind and in the same direction” as them or “to go after [them]” or to “pursue” them “as if with the intention of overtaking [them].” *See Follow, Followed, Following, & Follows*, The American Heritage Dictionary of the English Language (New College ed. 1982). Of the four “encounters” with Hoover, none showed that Hoover was “following” C.P. Mere speculation that someone is following you is not sufficient to warrant an injunction against that person. *See cf. Brennan*, 369 So. 3d at 324–25.

Although “[w]e are sensitive to the difficulties faced by the trial court in teasing out a thread of truth from a jumbled patchwork of conflicting narrative . . . [being] mindful that we are not the factfinder[,]” *Pickett*, 236 So. 3d at 1146, we must still scrutinize such findings against the backdrop of the record. Here,

nothing in the record suggests that Peak met her burden below to show Hoover "followed" or "harassed" C.P. so as to warrant the placement of a permanent injunction with restrictions on certain liberties guaranteed by our state and federal constitutions. *See Brennan*, 369 So. 3d at 323 ("Stalking injunctions deprive citizens of important rights, including the constitutional right to possess a firearm . . . . They carry serious restrictions of freedoms that can also result in criminal liability when violated, with punishment up to one year in the county jail." (citations omitted)).

We "must be careful not to apply the stalking statute to infringe on another person's constitutionally protected freedom of association or free speech or apply in an overbroad manner to reach non-malicious conduct." *Id.* This observtion applies here. Hoover was attending his daughter's high school orientation with her and his ex-wife. He spent, at most, thirty minutes at the school going from classroom to classroom, "walking" his daughter's schedule. Nothing about that behavior is malicious or criminal. *See id.* at 323 (discussing the understanding that section 784.084 penalizes criminal and malicious conduct).

## III

Accordingly, the trial court's final judgment granting an injunction for stalking against Hoover is REVERSED and the case is REMANDED with instructions to dissolve the injunction.

OSTERHAUS, C.J., and LEWIS, J., concur.

————————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

————————————————

Luke Newman of Luke Newman, P.A., Tallahassee, for Appellant.

Catia Peak, pro se, Appellee.

6