# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Nos. 1D2024-2186
1D2024-2187
_____

FRANK HEULE and JUDY HEULE,

   Appellants,

   v.

EDITH KNAPP HUMPHREY,

   Appellee.

_____

On appeal from the Circuit Court for Escambia County.
Michael Jones, Judge.

December 3, 2025

PER CURIAM.

Appellants, a married couple, appeal permanent injunctions for protection against stalking that the trial court entered against them in favor of Appellee, their next-door neighbor. We agree with Appellants that the evidence was legally insufficient to justify the entry of the injunctions. We, therefore, reverse.

*Factual Background*

In her injunction petitions, Appellee alleged that Appellants, since October 2019, had placed numerous homemade signs in their windows and had hung a skeleton, which they would dress in outfits that corresponded to events in the lives of Appellee and her

teenage daughter, on their front door. This began after Appellee's vehicle accidently rolled into Appellants' dining room, which resulted in physical damage to Appellants' home and emotional distress. Appellants kept a daily tally on one of their signs with the number of days that had elapsed since the accident. Other homemade signs talked about May being mental health awareness month, one referenced the movie *One Flew Over the Cuckoo's Nest* and included a photograph of actor Jack Nicholson, one mentioned perimenopause and empty nest syndrome, one said "[h]ere comes da judge" around the time that Appellee had a divorce hearing, and one read, "Just because you are paranoid doesn't mean they are watching (or listening) sometimes a steak out is just a barbeque right?" Another sign included the language "[h]ere's looking at you kid" and contained a photo of Humphrey Bogart. Appellants dressed the skeleton in things like a straitjacket and a black dress.

After the trial court denied both petitions, Appellee filed a supplemental affidavit in which she claimed that Appellants' behavior had caused her substantial emotional distress. During the subsequent hearing, Appellee explained that she had moved from her property for a period of approximately three years after the accident but returned in July 2023. She testified about the signs and the skeletons as well as Appellants' installation of some sort of solar device. She stated, "Whether it's listening I'm not really sure." She also testified about how difficult it had been for her to see Appellants' signs and knowing that her daughter, who claimed to have had nightmares about Appellants, was affected by them. She described one verbal altercation she had with Appellant Frank Heule over the fence that separated their properties. Appellee's daughter testified that she had never spoken to either of Appellants, and she could give no example of a time when something she had said to either her mother or a friend became the subject of one of Appellants' "displays." Appellant Frank Heule testified that he and his wife posted the signs and skeletons in response to things they heard about in the news. He claimed to have pointed a camera down his driveway, not at Appellee's home. Appellant Judy Heule testified about the distress that the accident with Appellee's vehicle had caused her and her husband, about how the couple chooses to "put [their] thoughts out there," and about how she had looked up Appellee's name in court records.

In granting Appellee's petitions and entering the injunctions, the trial court found that Appellee and her daughter had experienced "emotional distress." The court rejected Appellants' testimony that their signs were not targeting Appellee, while recognizing that Appellants' ill will towards Appellee stemmed from the accident. The court set forth in part:

> Admittedly if it was just one thing in isolation, if on one day there was a prom dress and it happened to be at the time of prom for the Petitioner's daughter, that would be one thing.

> But it's the collective of things which seem to – because they are – they have a – an – an – a connection with events in the neighbors' lives that – not saying every sign is directed at the Petitioner. Not saying that at all.

> But there is a consistency that some are. And it seems that there is a willingness and that's not just to speak to society generally. That is not what it is, despite the representation that that's what it was by the Respondent.

> . . . .

> And so – and they – they – the [Appellants] have a right to – to make public comment about political matters, and express their First Amendment right.

> What they don't have a right to do is to invade the privacy of the Petitioner by posting things that – that can be directly connected to the Petitioner like this whole truck thing and the count down and – and – and the things that have been mentioned.

When Appellee's counsel stated that the sign reflecting the time that had elapsed since the accident was probably constitutionally protected, the court replied, "I – I would agree with you, but for the fact that I found it's a part of a pattern of harassment." When Appellant Frank Heule stated, "I'm trying to decide for myself . . . what constitutes harassment – I don't know what she's going to –

determine in . . . her mind as being harassment and what isn't based on the little contact that I've had with her over the years," the court replied in part, "So . . . if there's a question about it, you either choose not to do that thing or choose to do that thing, and if she takes action on it then let some other judge or court decide in the future she's – she acted too sensitively or no, so she was justified in doing it because that was a continuation of harassment." The court denied Appellants' motions for rehearing. These consolidated appeals followed.

*Analysis*

In 2012, the Legislature created a cause of action for an injunction for protection against stalking. *See* § 784.0485(1), Fla. Stat. (2012). "Stalking" is defined as "willfully, maliciously, and repeatedly follow[ing], harass[ing], or cyberstalk[ing] another person." § 784.048(2), Fla. Stat. (2024). "Harass" means "to engage in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose." § 784.048(1)(a), Fla. Stat. (2024). "Course of conduct" means "a pattern of conduct composed of a series of acts over a period of time, however short, which evidences a continuity of purpose." § 784.048(1)(b), Fla. Stat. (2024). A petitioner seeking a stalking injunction is only required to prove "a single incident of stalking." *Pickett v. Copeland*, 236 So. 3d 1142, 1146 (Fla. 1st DCA 2018). This is because stalking requires proof of repeated acts. *Id.* at 1144. The petitioner must prove stalking by competent, substantial evidence. *Id.* at 1146. As we have explained, a trial court has broad discretion to grant an injunction. *Id.* at 1143–44. As such, an appellate court reviews an order granting a permanent injunction "for a clear abuse of that discretion." *Id.* at 1144; *see also Stone v. McMillian*, 270 So. 3d 510, 512 (Fla. 1st DCA 2019) (noting that a trial court's imposition of a stalking injunction is reviewed for an abuse of discretion and must be supported by competent, substantial evidence). However, the question of whether evidence is legally sufficient to justify the imposition of an injunction is a question of law that is reviewable de novo. *Pickett*, 236 So. 3d at 1146.

Here, the trial court entered the stalking injunctions based upon what it found to be Appellants' harassment of Appellee by

4

posting signs in their windows and hanging a skeleton on their front door that they would dress and decorate in various ways to correspond to events in Appellee's life. But this case lacks evidence of Appellee suffering "substantial emotional distress" due to the signs and ornaments hanging in Appellants' house that justifies the imposition of a stalking injunction. *See Savage v. Bustillo*, 397 So. 3d 1198, 1201 (Fla. 1st DCA 2024) (recognizing that substantial emotional distress is more than being weirded out or uncomfortable); *Venn v. Fowlkes*, 257 So. 3d 622, 624 (Fla. 1st DCA 2018) (recognizing that the substantial emotional distress that is necessary to support a stalking injunction is greater than just an ordinary feeling of distress).

Accordingly, we reverse.

REVERSED.

OSTERHAUS, C.J., and LEWIS and TANENBAUM, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Jason Cromey of Cromey Law, P.A., Pensacola, for Appellants.

Jessica L. Scholl of Moore, Hill & Westmoreland, P.A., Pensacola, for Appellee.