# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-1751

_____

MICHAEL PAULSON,

   Appellant,

      v.

SARAH RANKART,

   Appellee.

_____

On appeal from the Circuit Court for Gulf County.
John L. Fishel, II, Judge.

July 11, 2018

RAY, J.

Michael Paulson raises two independent grounds for reversal of the stalking injunction entered against him. First, he contends the trial court erred in issuing the injunction because the petitioner, Sarah Rankart, failed to demonstrate that an incident of harassment occurred within six months of the petition. We disagree on this point because the plain language of the statute does not require such a showing. However, we agree with Mr. Paulson's second argument that the evidence was legally insufficient to support the injunction.

*Facts*

Mr. Paulson and Ms. Rankart are neighbors in the small town of Port St. Joe. Ms. Rankart lives in a community of "cottages"

adjacent to Mr. Paulson's home of thirty years. Ms. Rankart moved into her cottage in 2013.

The testimony at the evidentiary hearing on the petition reflects a rocky relationship between the neighbors from the start. According to Ms. Rankart, she first met Mr. Paulson when he came to her cottage one evening and yelled at her to turn off her outdoor street-facing light. She turned off the light that evening but soon after turned it back on for security. After a few months with the light on, Mr. Paulson came back to her home and asked her "in a very rude tone" to build something around the light so it would not shine towards his home. Months later, she started receiving notices at her home from various authorities based on complaints by Mr. Paulson. She wondered each day whether she would come home to "a dog complaint or a light complaint." She explained that she was "just tired of this man getting to call the police on [her] just because of anything he wants to do."

Ms. Rankart additionally claimed that Mr. Paulson would stare at her while she sunbathed on her deck, which made her very uncomfortable. He would watch her from his "tiny side deck" even though he had a "huge deck" with a beautiful view of the ocean. She also observed Mr. Paulson looking at utility meters on her street's boardwalk on three occasions and she did not "want him creeping around the meters." Ms. Rankart was scared that Mr. Paulson would be so angry and drunk one day that he would shoot one of her dogs. She suffers from general anxiety disorders and depression, and he "amplifies [her] anxiety." She explained, "that's what horrible neighbors do, you know, sometimes you just have to deal with it."

According to Mr. Paulson, he never met Ms. Rankart before, did not know her, and did not want to know her. He admitted that he complained to code enforcement about her outdoor lights and complained to animal control and law enforcement about her barking dogs but explained that his complaints were focused on issues of noise and light pollution and were not directed towards Ms. Rankart or any specific person.

The trial court concluded that Ms. Rankart's complaints about Mr. Paulson's calls and reports to authorities were insufficient

under the law to support the entry of a stalking injunction. The court also rejected Mr. Paulson's argument that Ms. Rankart was required to establish that one of the incidents of harassment occurred within six months of the petition to satisfy her burden of proof. However, the court found that Ms. Rankart's unrebutted testimony concerning Mr. Paulson looking at her utility meters and watching her sunbathe was sufficient for the issuance of an injunction for protection against stalking. The court issued a judgment of injunction to be in effect for one year.[1]

*Analysis*

Section 784.0485, Florida Statutes (2016), provides for an injunction for protection against stalking. Stalking occurs when a person "willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person." § 784.048(2), Fla. Stat. (2016). To "harass" means "to engage in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose." § 784.048(1)(a), Fla. Stat. A "course of conduct" is "a pattern of conduct composed of a series of acts over a period of time, however short, which evidences a continuity of purpose." § 784.048(1)(b), Fla. Stat. In determining whether an incident causes "substantial emotional distress," courts use a "reasonable person" standard rather than a subjective one. *McMath v. Biernacki*, 776 So. 2d 1039, 1040 (Fla. 1st DCA 2001).

At the outset, Mr. Paulson argues the trial court failed to apply the correct legal standard for the issuance of a stalking injunction because there was no showing that one of the alleged incidents occurred "within six months of the filing of the petition." To support adding this extratextual element to the statutory definition of stalking, Mr. Paulson correctly points out that several district courts have interpreted the stalking statute with guidance from the repeat violence statute—section 784.046—which defines

---

[1] Although the injunction has now expired, the appeal is not moot. *Murphy v. Reynolds*, 55 So. 3d 716, 716 (Fla. 1st DCA 2011) (finding appeal of an expired injunction against repeat violence was not moot "because collateral legal consequences flowing from such an injunction outlast the injunction itself").

3

"repeat violence" as "two incidents of violence or stalking committed by the respondent, *one of which must have been within 6 months of the filing of the petition*." § 784.046(1)(b), Fla. Stat. (2016) (emphasis added).[2]

However, as we recently explained in *Pickett v. Copeland*, the stalking statute "makes no reference to the provisions of the repeat violence statute; does not mandate 'guidance' from the repeat violence provisions; and, independent of the requirements of [the repeat violence statute], creates a 'cause of action for an injunction for protection against stalking.'" 236 So. 3d 1142, 1145 (Fla. 1st DCA 2018) (holding that unlike the repeat violence statute, the injunction provisions of the stalking statute only require the petitioner to prove a single incident of stalking). The statutory provisions for an injunction for protection against stalking do not require that one of the underlying incidents occur within six months of the filing of the petition. Since we cannot depart from the plain and unambiguous language of the statute, we decline to add an element the Legislature chose not to impose.

Mr. Paulson next argues that even if the trial court applied the correct legal standard, the injunction is not supported by competent, substantial evidence. After carefully reviewing the record and being "sensitive to the difficulties faced by the trial court in teasing out a thread of truth from a jumbled patchwork of conflicting narrative," *Pickett*, 236 So. 3d at 1146, we agree with Mr. Paulson.

---

[2] *See e.g.*, *David v. Textor*, 189 So. 3d 871, 874-75 (Fla. 4th DCA 2016) (stating section 784.0485 "must be read in conjunction with section 784.046(1)(b)"); *Richards v. Gonzalez*, 178 So. 3d 451, 453 (Fla. 3d DCA 2015) ("[T]o define 'repeated following, harassing, or cyberstalking,' guidance can be derived from section 784.046."); *Wyandt v. Voccio*, 148 So. 3d 543, 544 (Fla. 2d DCA 2014) ("We analyze [section 784.0485] with guidance from section 784.046."); *Touhey v. Seda*, 133 So. 3d 1203, 1203 (Fla. 2d DCA 2014) ("Given the statute's recent enaction, support for our holding comes from cases analyzing allegations of stalking in the context of section 784.046.").

The trial court based the injunction on its findings that Ms. Rankart observed Mr. Paulson looking at her utility meters and that, at times, he would watch her sunbathe from his deck.[3] The facts alleged and proven do not rise to the level of stalking.

While Ms. Rankart testified that she observed Mr. Paulson looking at utility meters on her street's boardwalk on multiple occasions and that she did not "want him creeping around the meters for the cottages," no evidence indicated that the utility meters were on Ms. Rankart's property or that Mr. Paulson was focused on the utility meter for her cottage alone. In other words, there was no evidence that he willfully and maliciously engaged in a course of conduct directed at her. Additionally, we are not persuaded that a reasonable person would suffer substantial emotional distress from such acts. Indeed, Ms. Rankart testified that Mr. Paulson's conduct in this regard "weirds [her] out," not that it caused substantial emotional distress. *See Leach v. Kersey*, 162 So. 3d 1104, 1106 (Fla. 2d DCA 2015) (reversing stalking injunction in part because petitioner's testimony failed to demonstrate that she suffered substantial emotional distress).

Similarly, while Ms. Rankart testified that Mr. Paulson would stare at her while she was sunbathing on her porch, there was no evidence that Mr. Paulson made any statements or gestures toward her on these occasions, that he trespassed onto her property, or that he made threats of any kind. Without more, the evidence was insufficient to show that he willfully and maliciously engaged in a course of conduct that would cause her substantial emotional distress. *Compare Ashford-Cooper v. Ruff*, 230 So. 3d 1283, 1283 (Fla. 1st DCA 2017) (reversing stalking injunction against wife who made repeated calls and texts to her husband's girlfriend to try to reach her husband because the evidence did not show that a reasonable person in the girlfriend's position would suffer substantial emotional distress), *and McMath v. Biernacki,*

---

[3] The trial court properly disregarded Ms. Rankart's complaints that Mr. Paulson contacted animal control and law enforcement concerning her dogs and outdoor lights. *See Olin v. Roberts*, 42 So. 3d 841, 842 (Fla. 1st DCA 2010) (holding that filing of reports and complaints to authorities does not constitute harassment).

776 So. 2d 1039, 1040-41 (Fla. 1st DCA 2001) (evidence that respondent had made several attempts to talk to petitioner and that she did not feel comfortable around him did not amount to stalking under a "reasonable person" standard), *with Robertson v. Robertson*, 164 So. 3d 87, 88 (Fla. 4th DCA 2015) (respondent's conduct of looking inside petitioner's house in the middle of the night with a flashlight, uninvited and without warning, for three consecutive nights was a course of conduct causing substantial emotional distress).

Ms. Rankart was exasperated by Mr. Paulson's actions—from multiple dog and noise complaints to conduct that made her feel uncomfortable—but an injunction for protection is not designed to "'keep the peace' between parties who, for whatever reason, are unable to get along and behave civilly towards each other." *Power v. Boyle*, 60 So. 3d 496, 498 (Fla. 1st DCA 2011) (holding that respondent's conduct of yelling obscenities toward petitioners' house, allowing dog to urinate on their garage door, and writing profane notes on their mail did not amount to "violence" or "stalking" for an injunction for protection against repeat violence). Because Ms. Rankart's evidence fell short of the exacting standards to justify a stalking injunction and the collateral consequences that flow from it, we must reverse and remand for the trial court to vacate the injunction.

B.L. THOMAS, C.J., and WOLF, J., concur.

─────────────────────────

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

─────────────────────────

Shannon L. Novey, Christin F. Gonzalez, and Jerome M. Novey of Novey Law, Tallahassee, for Appellant.

Sarah Rankart, pro se, Appellee.