# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-5332

_____

BILLY J. STONE,

    Appellant,

    v.

TERESA A. MCMILLIAN,

    Appellee.

_____

On appeal from the Circuit Court for Escambia County.
Jennie Kinsey, Judge.

May 2, 2019

PER CURIAM.

On Teresa McMillian's second attempt to have an injunction for protection against stalking entered against her neighbor, Billy Stone, she succeeded. Stone appeals, arguing that the evidence is insufficient to support an injunction. We agree.[1]

## I.

### *The First Petition*

In December 2016, Stone put a threatening letter in McMillian's mailbox, warning her not to "pull another stunt like

---

[1] We affirm as to Stone's other two arguments without further comment.

[she] did today." Stone testified that McMillian honked her horn and intentionally drove her car at him while he walked his dog with his back turned, causing him to jump out of the way, thinking he and his dog were about to be hit. Stone admitted writing the letter, which intimidated McMillian, while he was angry about this incident. McMillian testified that Stone walked around the circular street the two lived on repeatedly throughout the day. Stone had done this since approximately 2009, but it now unnerved McMillian in light of Stone's letter.

McMillian also did not like that Stone walked his dog on a government-owned vacant lot next to her house. So, in March or April 2017, she set up a motion-sensing sprinkler on the border of her property to spray Stone while he was on the vacant lot. Although the sprinkler once succeeded in soaking Stone, he did not stop walking his dog on the empty lot and, in June 2017, McMillian called the police to report that he and his dog were defying a no-trespassing sign on the lot.

At the hearing on McMillian's petition for a stalking injunction in July 2017, the trial court noted several times that the parties were engaged in "tit for tat" behavior, encouraged them to "go [their] separate ways," and declined to grant the injunction.

*The Second Petition*

Just two months later in September, McMillian filed another petition for injunction for protection against stalking. Her chief complaint was that Stone walked past her house far too often. McMillian would not know this but for the videos recorded from her security camera, which she reviewed daily. McMillian maintained a log, marking how many times per day Stone walked past her house from August until September 2017, a number often in double digits. McMillian felt intimidated by Stone walking past her house because of the letter he wrote in December 2016. McMillian testified that on the morning of August 1, she discovered dog waste in her trash can, which had previously been placed at the curb and was to be emptied shortly. After reviewing her security camera, she fingered Stone and his dog as the culprits. McMillian admitted that she later went outside and yelled at Stone and his wife for this incident as they

walked past her house, but insisted that she was very afraid of him. McMillian similarly found Stone to be the guilty party, after reviewing her security camera footage, when she heard a vehicle down the road rev its engine too loud and for too long. Lastly, McMillian complained that on August 15, "Stone stepped on [her] driveway to avoid being hit by a bus that was driving past [her] house," even though he had previously been told to stay away from her property.

Stone testified that he has routinely walked the loop around his home since 2009 and has not in any way changed his routine based on McMillian. He stated that he walks to alleviate anxiety, to talk and visit with neighbors, and to help with the neighborhood watch program he helped develop. Six neighbors testified that Stone is active in the community and routinely walks past their house every day, often stopping to talk. Stone testified that he always picks up after his dog and, if it is trash day, will put it in the nearest can before it gets picked up; he admitted using McMillian's can once, but denied it was an attempt to intimidate her.

The trial court, with the same judge presiding from the first hearing in July, agreed that Stone walked the neighborhood because he cares about crime and for personal reasons, but felt that the sheer number of times signaled that he still had not "let go of" his animosity towards McMillian. The trial court understood that McMillian's trash can was on the curb and about to be emptied, but felt that Stone put his dog's waste in there to harass her. The trial court admitted struggling to find substantial emotional distress, and allowed McMillian to explain that she was still afraid of Stone due to his letter from December 2016, and his continued walking of the neighborhood. Stone argued that the trial court previously found the parties' behavior to be "tit for tat" and cannot now enter an injunction for stalking based on him walking around his own neighborhood. The trial court granted a one-year injunction.[2]

---

[2] Although the injunction is no longer in effect, this appeal is not moot. *See Paulson v. Rankart*, 251 So. 3d 986, 988 n. 1 (Fla. 1st DCA 2018).

3

## II.

We recently explained the framework for entering an injunction for protection against stalking pursuant to section 784.0485, Florida Statutes:

> Stalking occurs when a person "willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person." § 784.048(2), Fla. Stat. (2016). To "harass" means "to engage in a course of conduct directed at a specific person which causes substantial emotional distress to that person and serves no legitimate purpose." § 784.048(1)(a), Fla. Stat. A "course of conduct" is "a pattern of conduct composed of a series of acts over a period of time, however short, which evidences a continuity of purpose." § 784.048(1)(b), Fla. Stat. In determining whether an incident causes "substantial emotional distress," courts use a "reasonable person" standard rather than a subjective one. *McMath v. Biernacki*, 776 So.2d 1039, 1040 (Fla. 1st DCA 2001).

*Paulson v. Rankart*, 251 So. 3d 986, 988-89 (Fla. 1st DCA 2018). A trial court's imposition of such an injunction is reviewed for abuse of discretion and must be supported by competent, substantial evidence. *See Pickett v. Copeland*, 236 So. 3d 1142, 1143-44 (Fla. 1st DCA 2018).

## III.

A central focus of this injunction is the threatening letter Stone wrote to McMillian in December 2016. But in July 2017, after also hearing of McMillian's sprinkler ambush and report to the police, the trial court described the parties' behavior as "tit for tat" and declined to grant an injunction. Stone's subsequent behavior includes walking past McMillian's house often on his loop around the neighborhood, putting his dog's waste in her trash can once while it sat on the curb, revving his engine one day near her house, and stepping on her driveway to avoid being hit by a bus.

4

Without need to dissect each fact, we do not find legally sufficient evidence that Stone maliciously engaged in a course of conduct directed at McMillian that would cause a reasonable person substantial emotional distress.[3] Rather, it appears that the parties had an altercation in December 2016 and their relationship turned sour. After the trial court declined to grant an injunction in July 2017, McMillian took every innocuous act of Stone as one of aggression and intimidation, including scrupulously logging each time he walked past her home after daily review of her security camera.

In *Paulson*, the petitioner obtained a stalking injunction after testifying that her neighbor yelled at her, made complaints to authorities, stared at her, and looked at her utility meters, making her anxious and worried that he would shoot one of her dogs. 251 So. 3d at 987-88. We found that "the evidence was insufficient to show that he willfully and maliciously engaged in a course of conduct that would cause her substantial emotional distress." *Id.* at 990. This case is similar. *See also Power v. Boyle*, 60 So. 3d 496, 498 (Fla. 1st DCA 2011) ("The statute does not allow the trial court to enter injunctions simply 'to keep the peace' between parties who, for whatever reason, are unable to get along and behave civilly towards each other.").

## IV.

This neighborly feud, which does include some uncivil or immature conduct, does not include stalking. We therefore REVERSE the final injunction for protection against stalking.

B.L. THOMAS, C.J., and KELSEY and WINOKUR, JJ., concur.

---

[3] We do not disagree with Stone's argument that he walks around his neighborhood, put dog waste in a trash can, and avoided getting hit by a bus for legitimate purposes under section 784.048.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Robert J. Powell of Clark Partington, Pensacola, for Appellant.

No appearance for Appellee.