DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SUSANNE KLEMENT,**
Appellant,

v.

**BORIS KOFSMAN** o/b/o **A.K.,** a child,
Appellee.

No. 4D21-1867

[March 30, 2022]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Debra Moses Stephens, Judge; L.T. Case Nos. 502020DR010064 and 502021DR003234.

Alexander Fischer, Chad S. Purdie, and Antonia Iragorri of Sanchez Fischer Levine, LLP, Fort Lauderdale, and Raquel A. Rodriguez and Chance Lyman of Buchanan Ingersoll & Rooney PC, Miami, for appellant.

No brief filed for appellee.

KLINGENSMITH, J.

Appellant Susanne Klement appeals the trial court's entry of a stalking injunction sought by appellee Boris Kofsman on behalf of his minor child, A.K. After the trial court denied his first petition for a stalking injunction, appellee filed a second petition, making claims nearly identical to the first petition. When the matter came before a different judge, the second petition was granted. Klement claims that the entry of the injunction was barred by res judicata. We agree and reverse.

The parties were next door neighbors whose daughters attended the same daycare center and became friends. Appellee alleged that acrimony developed between the two families due to some religiously bigoted statements, leading Klement to refuse permission for her daughter to play with A.K. Klement purportedly told A.K. on at least five occasions that "my daughter doesn't want to play with you," causing the child to cry. This led to a text message exchange between Klement and appellee's wife with the latter asking Klement to "please stop harassing my child, husband and me," and Klement in return calling her a "horrible person."

In another alleged incident, A.K. was having an outside playdate with another child in the neighborhood when Klement approached and instructed her daughter to give a gift to the other child. When A.K. attempted to say hello to Klement's daughter, Klement allegedly began screaming, "Stop approaching my children," and "I'll call the police if you say hi to my child." During other episodes in this simmering conflict, appellee's wife called the police a few times to report Klement. On one occasion, she called the police non-emergency line because Klement had placed a "please honk your horn for a birthday" sign in front of their homes. After eight hours of hearing horns honking about every fifteen minutes, appellee's wife contacted the police, who sent an officer to the Klement home for a report about a disturbance to the neighborhood.

Another event involved appellee's decision to hang a swing on a tree behind their house for A.K. Three days after hanging the swing, appellee found it had been removed. The neighborhood's homeowner's association informed appellee that it removed the swing because Klement had notified it that the swing was on her property. Eventually, appellee and his family rented out their townhouse and moved to a different location.

Appellee then filed his first petition for an injunction, including these events and others as part of the petition and supporting testimony. After hearing evidence from both parties, the trial judge found that the incidents described did not meet the statutory requirements for an injunction:

> [The Court]: [L]egally I don't find that there is an ongoing course of harassment according to the law. I don't doubt that these incidents occurred. There were several in 2019 and we get all the way to December of 2020. I don't find that the incident . . . was, you know, meant to cause harm in any way, or was an act of—was a threat or was an act of intimidation. I don't doubt that it made your daughter feel bad, and I don't doubt that she was—you know, that to a four and five-year-old that this kind of thing is not traumatic. I don't doubt that. Okay? So, you know, I can't—I don't find that under this law and this case law that just the statute I do these stalking cases every week and I'm familiar with a lot of the case law. I just don't think it qualifies under this statute.

Three months later, appellee filed a second petition for an injunction against Klement, explaining that his family was moving back to the house next door to the Klements, that A.K. would be going to the same school as Klement's daughter, and they felt they needed "a protective order in place

to avoid further trauma and possible physical harm." This second petition contained the same allegations made in the first petition but added two new incidents in which appellee claimed he had been told by a neighbor that Klement had approached the neighbor and "was slandering [appellee and his wife] and saying [they] go around suing people everywhere."

The trial court held an evidentiary hearing presided over by a different judge than the one who ruled on the first petition. Appellee represented himself at this hearing and focused his testimony on the events he personally witnessed and that had already been detailed at the previous hearing. However, he did not present evidence related to the two new incidents involving the neighbor.

Klement moved to dismiss the petition and for sanctions, arguing appellee's second petition was barred by res judicata and that the new incidents noted by appellee did not meet the statutory requirements for an injunction. The successor judge denied the motion and stated her belief that Klement's behavior could be considered harassment. On the subject of res judicata, the successor judge stated,

> I don't think it ever makes a difference whether a person has applied for an injunction three, four or five times and didn't get it. What's important is, do you have the incidents, do you meet the statute, and I believe that at this point they have met the statute.

In making her oral pronouncement, the successor judge referenced many of the incidents between the two parties, including appellee's allegations of anti-Semitic comments, Klement's interactions with A.K., and the removal of the tree swing. The successor judge granted an injunction for a six-month period, and Klement appealed.

We consider a denial of a motion to dismiss under a de novo standard of review. *See Travel Ins. Facilities, PLC v. Naples Cmty. Hosp., Inc.*, 330 So. 3d 108, 110 (Fla. 2d DCA 2021). Klement argues the successor judge should have granted her motion to dismiss appellee's second petition as barred under the doctrine of res judicata. She asserts res judicata applies because appellee alleged essentially the same incidents as in his first petition and because the successor judge made her decision based on the same set of incidents that the previous judge had already considered and rejected.

"Res judicata is a judicial doctrine used to bar parties from relitigating claims previously decided by a final adjudication on the merits." *Anderson*

*v. Vanguard Car Rental USA Inc.*, 60 So. 3d 570, 572 (Fla. 4th DCA 2011) (quoting *W & W Lumber of Palm Beach, Inc. v. Town & Country Builders, Inc.*, 35 So. 3d 79, 82–83 (Fla. 4th DCA 2010)). "For res judicata to apply, there must be four identities: (1) identity of thing sued for, (2) identity of cause of action, (3) identity of persons and parties to the action, and (4) identity of quality or capacity of persons for or against whom the claim is made." *Burns v. Daimler Chrysler Corp.*, 914 So. 2d 451, 453 (Fla. 4th DCA 2005). "If these requirements are not met, the doctrine of res judicata does not apply." *Biscayne Constr., Inc. v. Wesley Constr. Co.*, 276 So. 2d 524, 526 (Fla. 3d DCA 1973).

Res judicata bars not only claims that were raised but also claims that could have been raised in the prior action. *In re Senate Joint Resolution of Legis. Apportionment 2-B*, 89 So. 3d 872, 883-84 (Fla. 2012) ("Res judicata . . . [is] premised on the assumption that the parties have had the ability to raise all necessary claims and discover all necessary evidence to develop their cases."). However, "[c]laims arising subsequent to a prior action . . . [that] perhaps could not, have been brought in that prior action . . . are not barred by res judicata regardless of whether they are premised on facts representing a continuance of the same course of conduct." *Greiner v. De Capri*, 403 F. Supp. 3d 1207, 1225 (N.D. Fla. 2019) (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 383 (2d Cir. 2003)); *M.C.G. v. Hillsborough Cnty. Sch. Bd.*, 927 So. 2d 224, 227 (Fla. 2d DCA 2006) ("The doctrine of res judicata—which requires that the second suit present the *identical* cause of action as was previously litigated—is not applicable where the claims in the two cases concern different periods of time.").

In an analogous case, the Southern District of Florida found that when subsequent incidents of stalking arise, res judicata does not preclude litigation of those incidents that occurred after the initial claims of stalking were made and presented to the court. *Nassar v. Nassar*, No. 18-14455-CIV, 2020 WL 9460329 at *3–4 (S.D. Fla. Apr. 17, 2020) (allowing the plaintiff to litigate incidents that occurred seven months after she filed her initial complaint). Our court has also found that res judicata will not bar litigation of different circumstances that would support the imposition of an injunction. *Heck v. Heck*, 714 So. 2d 1200, 1200–01 (Fla. 4th DCA 1998).

Because the first judge had previously considered the incidents described again in the second hearing and found each of them insufficient to constitute qualifying acts of harassment or stalking under the applicable statute, the successor judge was barred by res judicata from reconsidering those same claims and deeming them qualifying incidents. Mere disagreement with conclusions reached by a prior court does not

avoid the preclusive effect of res judicata. Even if the successor judge personally felt the incidents described in the first petition did constitute stalking or harassment such that an injunction should have been entered, because those incidents had already been considered, the doctrine of res judicata prevented the successor judge from imposing any injunction based on any incident previously rejected as non-qualifying under the statute.

While res judicata barred the re-litigation of the same incidents presented at the first hearing, the two new incidents alleged in the second petition—that Klement complained to a mutual neighbor that appellee was litigious—would not have been barred by res judicata because they happened after the determination of appellee's first petition. *See id.* However, appellee did not present evidence related to those new claims. Instead, appellee presented evidence at the second hearing regarding only the same incidents described and adjudicated in the first petition and did not suggest any change or difference in circumstances or facts. *See id.* Although the two newly added claims presented in the second petition may not have been barred by res judicata, the successor judge's oral pronouncement made clear that she did not base her ruling on the two new incidents or on any previous finding regarding the existence of a qualifying incident.

For those reasons, the successor judge erred in denying Klement's motion to dismiss the second petition to the extent that she relied on allegations previously adjudicated by the first judge as non-qualifying. Although the injunction expired after six months, this appeal is not moot because the entry of an injunction has collateral legal consequences lasting beyond its term of existence. *See Vaught v. Vaught*, 189 So. 3d 332, 333 n.1 (Fla. 4th DCA 2016) (finding that an appeal from a domestic violence injunction that had expired was not moot "due to the collateral consequences such an injunction might cause") (quoting *Selph v. Selph*, 144 So. 3d 676, 679 (Fla. 4th DCA 2014)); *Paulson v. Rankart*, 251 So. 3d 986, 988 n.1 (Fla. 1st DCA 2018). Therefore, we reverse the trial court's ruling and vacate the injunction entered against Klement.

*Reversed.*

WARNER and LEVINE, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***