DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SCOTT ALEXANDER JOHNSTONE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D21-1411

[September 30, 2022]

Appeal from the County Court for the Nineteenth Judicial Circuit, Okeechobee County; William Wallace, Judge; L.T. Case No. 472018MM001209A.

Carey Haughwout, Public Defender, and Ross Frank Berlin, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Anesha Worthy, Assistant Attorney General, West Palm Beach, for appellee.

PER CURIAM.

In the instant case, the trial court denied Appellant Scott Johnstone's motion for judgment of acquittal ("JOA") with respect to his conviction for misdemeanor stalking in violation of section 748.048, Florida Statutes (2017). Appellant presents two arguments on appeal. First, Appellant argues no competent substantial evidence supported his conviction beyond a reasonable doubt. Second, "if this Court does feel bound by its" opinion in *Johnstone v. State*, 298 So. 3d 660 (Fla. 4th DCA 2020) (*Johnstone I*), and "concludes that [*Johnstone I*] prevents it from reversing here," the Court should then, en banc, recede from *Johnstone I*.

## A. Appellant's Issue II

Addressing the second argument first, we agree that *Johnstone I* is not controlling for the disposition of this appeal. The instant case is distinguishable from *Johnstone I*, because the case before us involves:

- a different judge/finder of fact (County Court Judge Wallace in the instant criminal stalking case, Circuit Court Judge Vaughn in the now-concluded violation of probation case (*Johnstone I*);
- a different evidentiary record;
- a different standard of proof for the trial court ("beyond a reasonable doubt" in the instant criminal stalking case, *Humbert v. State*, 933 So. 2d 726, 727 (Fla. 2d DCA 2006), rather than "greater weight of the evidence" for the violation of probation case, *Johnstone I*, 298 So. 3d at 664); and
- a different standard of review ("de novo") in the instant criminal stalking case, *State v. Konegen*, 18 So. 3d 697, 698 (Fla. 4th DCA 2009), which is significantly less deferential than the standard of review which we applied in the violation of probation case ("The determination of whether a violation of probation is willful and substantial is a question of fact and will not be overturned on appeal unless the record shows that there is no evidence to support it." *Johnstone I*, 298 So. 3d at 664 (quoting *Green v. State*, 23 So. 3d 820, 821 (Fla. 4th DCA 2009))).

As we noted in *Johnstone I*, "[d]etermining whether an individual's behavior is merely boorish or juvenile as opposed to illegal stalking subject to criminal penalty can require the drawing of fine lines." *Id.* at 662. The "fine lines" here are drawn differently than in the violation of probation case. *See, e.g.*, *Morris v. State*, 727 So. 2d 975, 977 (Fla. 5th DCA 1999) ("An acquittal in a criminal case does not preclude the judge from determining that a parole or probation violation has occurred based on the same conduct."); *Williams v. State*, 573 So. 2d 124, 126-27 (Fla. 4th DCA 1991) (evidence was sufficient to warrant revocation of probation but insufficient to sustain the conviction).

Because we conclude that a reversal in the instant case would not be inconsistent with the resolution of *Johnstone I* (we do not "feel bound" by that opinion), the condition precedent for Appellant's request for en banc consideration of *Johnstone I* is not present. Moreover, this Court has previously, by order dated July 31, 2020, denied a motion for rehearing en banc of *Johnstone I*. En banc consideration of *Johnstone I* would be successive and contrary to the conditional nature of Appellant's Issue II request.

**B. Appellant's Issue I**

Contrary to Appellant's first argument, after a careful consideration of the evidence presented, we determine that the State presented competent

2

and substantial evidence in the misdemeanor criminal stalking trial heard before Judge Wallace to prove Appellant's guilt beyond a reasonable doubt for the charge of stalking in violation of section 748.048, Florida Statutes (2017).

*Affirmed.*

CONNER and FORST, JJ., concur.
ARTAU, J., dissents with an opinion.

ARTAU, J., dissenting.

I agree with the defendant's request that we consider this case en banc to recede from *Johnstone v. State,* 298 So. 3d 660 (Fla. 4th DCA 2020) (holding that the defendant violated his probation by "stalking" his neighbors based on essentially the same conduct asserted in this case) ("*Johnstone I*"). I therefore respectfully dissent.[1]

*Johnstone I* and the majority's affirmance of the defendant's stalking conviction in this case ("*Johnstone II*") misinterpret the stalking statute by overlooking the "substantial emotional distress" and "no legitimate purpose" guideposts provided by the statutory text while broadly defining the term "harass" to include almost anything that a neighbor finds annoying about another neighbor's conduct. *See* § 784.048(1)(a), Fla. Stat. (2017); *see also Johnstone I,* 298 So. 3d at 666, 669 (Klingensmith, J., dissenting) ("this case provides yet another illustration of the misuse of the stalking and harassment statutes[]," [and gives a complaining neighbor] "veto power over their neighbor's lawful but annoying behavior").

By misinterpreting the stalking statute, *Johnstone I* and *Johnstone II* jeopardize the actions of law-abiding residents that may find themselves at odds with their neighbors such as a father helping his child with a backyard science experiment that causes a foul-smelling odor; a scantily-dressed teenager taking an outdoor shower; a forgetful grandfather repeatedly placing garbage or debris in the wrong place; a mother using a lawnmower too early in the morning; a family enjoying their fire ring on a windy day; a grandmother taking pictures of wildlife she spots in her neighbor's yard; an activist utilizing her fence to post her views; and a

---

[1] While I agree with the defendant's request that we consider this case en banc to recede from *Johnstone I,* the proper procedure is for the defendant to file a motion for en banc review in the manner provided in Florida Rule of Appellate Procedure 9.331(d).

3

resident who curiously looks at a neighbor while on a break from clearing brush with a machete.

Thus, *Johnstone I* and *Johnstone II* prohibit and criminalize legal acts on a resident's property under the auspices of the harassment prong of the stalking statute simply because a neighbor finds the acts annoying. *See id.* at 666 (Klingensmith, J., dissenting) ("What the [*Johnstone I*] majority does . . . is ratify the use of this [stalking] statute to punish people for engaging in petty annoying behavior in the context of a neighborhood dispute."). However, the Legislature did not include this type of peaceful conduct, even when it annoys a neighbor, in its proscription against stalking by harassment. Instead, the Legislature expressly excluded conduct that would not cause "substantial emotional distress" or has some "legitimate purpose." *See* § 784.048(1)(a), Fla. Stat. (2017).

Moreover, even if the stalking statute was arguably susceptible to differing constructions, the rule of lenity requires us to "strictly" construe the statute "most favorably to the accused" so as not to criminalize conduct that is not, in and of itself, criminal. § 775.021(1), Fla. Stat. (2017) ("The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.").

## Background

At the non-jury criminal trial in this case, the State presented evidence establishing that the defendant owned and lived on roughly six-and-a-half acres of residential property in a rural Okeechobee County neighborhood. The defendant's property lies adjacent to and south of a similarly sized parcel his neighbors own. A dirt access road on a shared easement, having the width of a single car, runs between the two properties.

Despite the undisputed fact that both the defendant and his neighbors have an equal legal right to use the access road, the testimony reflects that the neighbors would incorrectly refer to it as their "private driveway" and were annoyed whenever the defendant used it.

The access road is the neighbors' only means of ingress and egress to their parcel because their property does not permit direct access to the public road which runs perpendicular to the access road along the southern edge of both their property and the defendant's property.

The defendant, however, has direct access to the public road from his driveway along the southern edge of his property. Thus, the neighbors feel

they should have the right to use the access road as their "private driveway" to the exclusion of the defendant. Even though the defendant does not require the access road to enter his property, he still has an equal right to use it as a shared easement.

After the relationship between the neighbors and the defendant soured, the defendant began to annoy the neighbors who resorted to calling law enforcement, the fire department, and code enforcement to complain about the defendant numerous times. Additionally, after the neighbors discovered that the defendant had been placed on probation for an unrelated matter, they called the defendant's probation officer to complain about the defendant.

The State's proof established that the defendant annoyed his neighbors by engaging in the following acts:

- placing barbed wire on the top of his fence facing the neighbors' property accompanied by "Keep Out" signs;

- hanging empty bags and other trash off his fence;

- displaying signs on his fence containing profanity and a clown face with an arrow pointing in the direction of the neighbors' property captioned: "Stupid People Live Here";

- breaking up rock from the clean-out of his pond and allowing some of the broken rock to scatter on the easement road (though the record does not reflect that the access road was ever blocked to vehicular access due to the scattered rocks, or that any vehicles were damaged by any of the rocks);

- dragging garbage, trees, rocks, large chunks of concrete, and other debris from his property, and disposing of it on the edge of the public road near the neighbors' mailbox;

- building a "duck blind" (also referred to in the testimony as a "carport") in the northeast corner of his property, and ultimately throwing its dismantled parts on his property in a ditch along his fence line nearest the neighbors' property;

- pouring a mixture of what the neighbors described as some sort of unidentified substance that smelled like urine, feces, and oil on the ground in the northeast corner of his property such that foul smells wafted in the direction of the neighbors' property;

5

- burning garbage in the northeast corner of his property, when the summertime wind blew toward the neighbors' property, and running over the burning garbage with his lawnmower causing the scattering of smoldering ashes;

- parking a running lawnmower in the southeast corner of his property at 7:00 a.m. on Christmas day;

- walking his dog down the shared easement past the neighbors' front yard without acknowledging or responding to one of the neighbor's as he called out: "You know, hey, can I help you?  What are you doing?";

- showering outside on the back porch of his property while wearing only his underwear (though no one testified that he ever exposed himself while taking outdoor showers);

- staring at the neighbors and their house from his property;

- standing on the corner of his property while holding a machete and staring at one of the neighbors as her vehicle entered the access road (though no one testified that he ever threatened the neighbor or anyone else with the machete he was carrying during this or any other incident); and

- filming or taking pictures of the neighbors and their property.

After denying the defendant's motion for judgment of acquittal, the trial court ultimately found the defendant guilty of stalking his neighbors without specifying what conduct established his guilt beyond a reasonable doubt.

## Analysis

A person commits the misdemeanor offense of stalking if he or she "willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another person." § 784.048(2), Fla. Stat. (2017).  As used in this statute, the term "'[h]arass' means to engage in a course of conduct directed at a specific person which *causes substantial emotional distress* to that person *and serves no legitimate purpose*."  § 784.048(1)(a), Fla. Stat. (2017) (emphasis added); *see also Cash v. Gagnon*, 306 So. 3d 106, 110 (Fla. 4th DCA 2020) (explaining that "[t]he course of conduct must serve no legitimate purpose" and "must cause substantial emotional distress, which is greater than just an ordinary feeling of distress" (alterations in

original) (quoting *Johnstone I*, 298 So. 3d at 664-65)).

The statutory phrase "'[c]ourse of conduct' means *a pattern of conduct composed of a series of acts over a period of time*, however short, which evidences a continuity of purpose[, and] . . . *does not include constitutionally protected activity* such as picketing or other organized protests." § 784.048(1)(b), Fla. Stat. (2017) (emphasis added).

Therefore, the signs and other forms of constitutionally protected expression displayed on the defendant's fence cannot constitute any of the incidents of harassment or stalking necessary to support the defendant's conviction. *See, e.g., David v. Textor*, 189 So. 3d 871, 876 (Fla. 4th DCA 2016) ("[A] 'course of conduct' for purposes of the statute does not include protected speech. This includes speech that may be offensive or vituperative." (citations omitted)).

As defined in the charging statute, the State was required to prove at least two or more incidents, each of which would constitute harassment or stalking. *See, e.g.*, *Cash*, 306 So. 3d at 109 ("A course of conduct requires multiple acts that are separated by time or distance." (citing *Levy v. Jacobs*, 69 So. 3d 403, 405 (Fla. 4th DCA 2011)). Thus, the statutory text excludes any interpretation aggregating multiple incidents that, in and of themselves, would not constitute harassment or stalking.

Even if one of the isolated acts listed above arguably sufficed as a qualifying incident under the statute, the State's proof would still have been insufficient to constitute the "[c]ourse of conduct" necessary to support the defendant's conviction because the statute requires multiple qualifying acts "willfully, maliciously, and repeatedly" directed against the neighbors in "a series of acts over a period of time." *See* § 784.048(1)(a), (b), Fla. Stat. (2017).

An important guidepost included in the stalking statute which was overlooked by the majority in *Johnstone I* and here again in *Johnstone II* is the requirement that the harassing course of conduct cause "substantial emotional distress." *See* § 784.048(1)(a), Fla. Stat. (2017). "In determining if an incident causes substantial emotional distress, courts use a reasonable person standard, not a subjective standard." *Slack v. Kling*, 959 So. 2d 425, 426 (Fla. 2d DCA 2007) (citations omitted); *see also, e.g.*, *Venn v. Fowlkes*, 257 So. 3d 622, 624 (Fla. 1st DCA 2018) ("[A] reasonable person does not suffer substantial emotional distress easily." (citation omitted)); *Mitchell v. Brogden*, 249 So. 3d 781, 782 (Fla. 1st DCA 2018) (adopting an objective, reasonable person standard for the existence of "substantial emotional distress").

7

The State failed to present any competent and substantial evidence to establish that two or more of the incidents directed at either neighbor would have caused substantial emotional distress to a reasonable person under the objective standard which we are required to apply.

Although one of the neighbors testified that she was "horrified" when she saw the defendant stare at her from the corner of his property while holding a machete as she was turning her vehicle onto the access road, the absence of any overt threatening action with the machete—which has a legitimate use to clear brush and perform other landscaping tasks—should not cause a reasonable person to suffer substantial emotional distress. *Compare Paulson v. Rankart*, 251 So. 3d 986, 988-90 (Fla. 1st DCA 2018) (repeatedly staring at neighbor while she sunbathed, together with other complaints of creeping around her property, was not stalking without evidence that the staring was accompanied by any statements or gestures evidencing a threat), *Baruti v. Vingle*, 343 So. 3d 150, 151-52 (Fla. 5th DCA 2022) (concluding that a "mean stare" by an estranged wife who came to the workplace of her husband's paramour to interrupt her while she worked and make her feel "uncomfortable" was insufficient to "constitute substantial emotional distress"), *and Caterino v. Torello*, 276 So. 3d 88, 90-94 (Fla. 2d DCA 2019) (staring at neighbor whenever she went outside, including one stare described as looking at her "like she absolutely wants to kill" her, was insufficient to constitute substantial emotional distress for stalking), *with Robertson v. Robertson*, 164 So. 3d 87, 88 (Fla. 4th DCA 2015) (entering another's residential property "in the middle of the night, uninvited and without warning, and look[ing] inside her darkened windows with a flashlight" for three consecutive nights was sufficient to constitute a course of conduct capable of causing substantial emotional distress in a reasonable person).

While the neighbors may have been irritated, annoyed, and aggravated by the defendant's actions, "[m]ere irritation, annoyance, embarrassment, exasperation, aggravation, and frustration, without more, does not equate to 'substantial emotional distress.'" *Cash*, 306 So. 3d at 110 (quoting *Johnstone I*, 298 So. 3d at 669 (Klingensmith, J., dissenting)); *see also Klenk v. Ransom*, 270 So. 3d 1272, 1273 (Fla. 1st DCA 2019) ("It is not enough to be 'weirded out' or uncomfortable." (citation omitted)).

Furthermore, while littering, noise violations, noxious odors, burns, and improper disposal of garbage or debris might constitute a nuisance, the defendant was not charged with a nuisance violation under chapter 823, Florida Statutes (2017), or any other laws prohibiting such actions.

Nothing in the stalking statute prevents nuisances from occurring on

8

or around one's property. *See, e.g., Sinopoli v. Clark*, 290 So. 3d 159, 160-64 (Fla. 2d DCA 2020) (holding that a nuisance action, rather than a petition for protection against stalking, was the proper forum to address neighbor's shredding of the screen cage around his pool, placement of a floodlight on his property facing directly into his neighbor's backyard and her outdoor shower, and "nocturnal cutting of the shrubbery" because mere nuisances cannot cause the requisite "substantial emotional distress" for stalking); *Klemple v. Gagliano*, 197 So. 3d 1283, 1284-86 (Fla. 4th DCA 2016) (concluding that "tit-for-tat" conduct which included cutting the neighbor's cable wire, throwing some sort of unidentified chemicals on neighbor's car, closing the windows on a shared catwalk to frustrate the neighbor's effort to keep them open, and occupying the neighbor's parking spot, did not constitute stalking); *Richards v. Gonzalez*, 178 So. 3d 451, 452-54 (Fla. 3d DCA 2015) (engaging in nuisance-type conduct toward neighbor—which included running a loud pressure cleaner to disrupt neighbor as she was entertaining guests, engaging in noisy behavior on his property, tossing an empty plastic water bottle towards neighbor's car, and throwing garbage onto neighbor's property—were insufficient to constitute stalking).

Section 934.03(1)(a), Florida Statutes (2017), prohibits the intercepting or recording of oral communications under certain circumstances as defined in section 934.02(2), Florida Statutes (2017), but the defendant was not charged with intercepting oral communications. Instead, the State's proof only established that he simply filmed or photographed what could be publicly seen from his property.

Nothing in the stalking statute prevents the filming or photographing of what can be publicly seen from one's property. *See, e.g., Caterino*, 276 So. 3d at 90-94 (repeatedly videotaping and photographing neighbor whenever she went outside was insufficient to constitute stalking). Otherwise, many residential homeowners would be required to remove their exterior security cameras which not only record activity outside their home, but also outside their neighbors' homes. Indeed, if filming what can be publicly seen from one's property constituted stalking, the neighbors here also could have been charged with stalking for utilizing their security cameras to film the defendant numerous times.

Another important guidepost included in the stalking statute which was overlooked by the majority in *Johnstone I* and here again in *Johnstone II* is the requirement that the State prove the defendant had "no legitimate purpose" for any of the qualifying acts directed at either neighbor. *See* § 784.048(1)(a), Fla. Stat. (2017). The defendant here was cleaning out his property; breaking-up rock from a clean-out of his pond; constructing a

9

carport; performing maintenance; conducting landscaping and gardening tasks; disposing of garbage, trees, rock, concrete, and other debris; showering to cleanse himself; burning garbage to eliminate it; utilizing a machete to cut brush and trees; running a lawnmower on his rural property; taking videos or pictures to document what he could publicly see; viewing his surroundings; and walking his dog. Because each of those actions have some legitimate purpose, they cannot support a charge of stalking under the plain language of the stalking statute.

In addition, the rule of lenity, as codified in section 775.021(1), Florida Statutes (2017), requires that we resolve any differing constructions "most favorably to the accused." *Id.* In doing so, we must be cognizant of a property holder's fundamental right to freely use his or her property without unintended exposure to criminal sanctions. *See Corn v. State*, 332 So. 2d 4, 7 (Fla. 1976) ("The right of property has been characterized as a sacred right, the protection of which is an important object of government.").

Thus, a reasonable construction of the term "no legitimate purpose" prevents application of the stalking statute to criminalize the lawful use and occupation of property despite a neighbor's exasperation with any discourteous, impolite, disrespectful, or boorish conduct associated with its use and occupation. *See Beckman v. Marshall*, 85 So. 2d 552, 555 (Fla. 1956) ("There are many acts which the owner of land may lawfully do, although it brings annoyance, discomfort, or injury to his neighbor, which are *damnum absque injuria*." (quoting *Antonik v. Chamberlain*, 78 N.E.2d 752, 759 (Ohio Ct. App. 1947))).[2]

Accordingly, it is my considered judgment that this court should recede en banc from *Johnstone I* and reverse here in *Johnstone II* because anything less exacerbates the intra-district conflict in our decisional law interpreting the stalking statute.[3] *Compare Sutton v. Fowler*, 332 So. 3d 1001, 1002, 1006 (Fla. 4th DCA 2021) (yelling of obscenities by upstairs condominium resident, directed toward downstairs resident, as well as "screaming and yelling and howling like a wolf" on both his balcony and

---

[2] *Damnum absque injuria* is defined as: "Loss, hurt, or harm without injury in the legal sense, that is, without such breach of duty as is redressible by an action. A loss which does not give rise to an action for damages against the person causing it." *Black's Law Dictionary* (4th ed. 1968).

[3] Contrary to the majority's assertion, a motion for en banc review to recede from *Johnstone I* in this case would not be "successive," as it would be the first such motion filed in the instant direct appeal.

inside his residence, were insufficient to constitute stalking), *Cash*, 306 So. 3d at 109-10 (engaging in uncivil conduct toward fellow condominium resident—which included three separate confrontational encounters involving verbal hostility, yelling, cursing, and the revving of a car engine—constituted only an "uncomfortable neighborly dispute[] that d[id] not rise to the level of stalking" (citation omitted)), *and Klemple*, 197 So. 3d at 1284-86 (concluding that "tit for tat" conduct which included cutting the neighbor's cable wire, throwing some sort of unidentified chemicals on neighbor's car, closing the windows on a shared catwalk to frustrate the neighbor's effort to keep them open, verbal threats, name-calling, and waiting for the neighbor in his parking spot did not constitute stalking), *with Johnstone I*, 298 So. 3d at 660-66 (holding that the defendant violated his probation by "stalking" his neighbor based on essentially the same conduct asserted here in *Johnstone II*).

Moreover, if we do not recede en banc from *Johnstone I* and reverse here in *Johnstone II*, we will continue to exacerbate the inter-district conflict between *Johnstone I* and the decisional law interpreting the stalking statute from our sister courts. *Compare Baruti*, 343 So. 3d at 151-52 (concluding that interruptions at the workplace together with a "mean stare" did not constitute the requisite "substantial emotional distress" for stalking), *Laquidara v. Houghtaling*, 320 So. 3d 243, 244-45 (Fla. 2d DCA 2021) (yelling, screaming, and "hurling profanities" by business owner at his neighboring business owner over the use of an easement, with accompanying conduct designed to disrupt the business operations, did not constitute stalking), *Sinopoli*, 290 So. 3d at 160-64 (holding that repeatedly staring at complaining neighbor from the porch next door, shredding of the screen cage around his pool, placement of a floodlight on his property facing directly into his complaining neighbor's backyard and her outdoor shower, and his "nocturnal cutting of shrubbery" were mere nuisances that did not constitute the requisite "substantial emotional distress" for stalking), *Shannon v. Smith*, 278 So. 3d 173, 174-76 (Fla. 1st DCA 2019) (removing, throwing, and defacing of neighborhood signs, as well as verbal yelling of profanities at his neighbor, including at a homeowners' association meeting, did not constitute stalking), *Caterino*, 276 So. 3d at 90-94 (videotaping and photographing neighbor, threatening comments, and staring whenever she went outside, including one stare described as looking at her "like she absolutely wants to kill" her, were insufficient to constitute substantial emotional distress for stalking), *Stone v. McMillian*, 270 So. 3d 510, 511-13 (Fla. 1st DCA 2019) (concluding that repeatedly walking past a complaining neighbor's house, leaving dog waste in her trash can, stepping onto her driveway, and revving of his vehicle "too loud and for too long" were insufficient to constitute stalking), *Paulson*, 251 So. 3d at 988-90 (holding that creeping conduct which

11

included repeatedly staring at his next-door neighbor from his side deck when she sunbathed was not stalking where there was no evidence he made any accompanying statements or gestures evidencing a threat), *Richards*, 178 So. 3d at 452-54 (engaging in nuisance-type conduct toward neighbor—which included staring at the neighbor and her guests, running a loud pressure cleaner to disrupt her as she was entertaining guests, engaging in noisy behavior on his property, tossing an empty plastic water bottle towards her car, throwing garbage onto her property, and "laughing and taunting her"—were insufficient to constitute stalking), *and Power v. Boyle*, 60 So. 3d 496, 497-99 (Fla. 1st DCA 2011) (yelling of obscenities to her neighbor, "flipping off" neighbor's home, allowing her pet to urinate on neighbor's garage door, and writing profane notes on the neighbor's misdelivered mail did not amount to stalking), *with Johnstone I*, 298 So. 3d at 660-66 (holding that the defendant violated his probation by "stalking" his neighbor based on essentially the same conduct asserted here in *Johnstone II*).

## Conclusion

As we explained in *Sutton*, these incidents, "while disturbing, merely involved strange behavior" that "on an objective level would not cause substantial emotional distress in a reasonable person." 332 So. 3d at 1006 (citing *Cash*, 306 So. 3d at 110). Simply put, the stalking statute is not an elixir to solve a myriad of disputes "between parties who, for whatever reason, are unable to get along and behave civilly towards each other." *Power*, 60 So. 3d at 498 (citation omitted).

Therefore, I respectfully dissent and would urge my colleagues to recede en banc from *Johnstone I* and reverse the defendant's stalking conviction here in *Johnstone II*.

*        *        *

**Not final until disposition of timely filed motion for rehearing.**

12