# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2023-2687
_____

RUBY ANN SAVAGE,

    Appellant,

    v.

KRISTEN ARMISTA BUSTILLO,

    Appellee.

_____

No. 1D2023-2688
_____

RUBY ANN SAVAGE,

    Appellant,

    v.

RUDY BUSTILLO, III,

    Appellee.

_____

On appeal from the Circuit Court for Escambia County.
Stephen A. Pitre, Judge.

December 11, 2024

ROWE, J.

Ruby Ann Savage appeals two final judgments of injunctions—one for protection against stalking and the other for protection against domestic violence. Savage's son, Rudy Bustillo III and her daughter-in-law, Kristen Armista Bustillo, sought to enjoin Savage from contacting them and their daughter (Savage's granddaughter) by alleging that she was stalking them. Savage argues that the trial court erred in granting the injunctions because her repeated contacts with her son and daughter-in-law would not have caused substantial emotional distress in a reasonable person. We agree and reverse.

*Facts*

Before seeking injunctions, the Bustillos asked Savage to cease contact with them and their daughter. Savage ignored these requests until the Bustillos reported their concerns about Savage's actions to the Seminole County Sheriff's Department. But Savage quickly reinitiated contact.

The Bustillos then filed petitions seeking injunctions against Savage. The Bustillos alleged that Savage travelled from her home in Altamonte Springs to Pensacola to enroll her daughter (Rudy's sister) in the same summer ballet intensive that the Bustillos' daughter (Savage's granddaughter) attended. Even so, the Bustillos admitted that Savage appeared at the ballet studio only once and their daughter was not there that day.

The Bustillos also alleged that Savage contacted Kristen's mother to ask about the Bustillos. The Bustillos asserted that they blocked Savage on all social media accounts, but Savage managed to send messages to their daughter's Instagram account asking to be unblocked. Kristen also alleged that she believed—but could not prove—that Savage sat in the Bustillos' driveway one day about a year before the hearing. Rudy alleged that his mother had tried to set up a dinner between the Bustillos' daughter and Savage's daughter "so that they could see each other." Rudy also alleged that Savage tried to contact him about his "grandfather going through chemo treatment." The Bustillos supported their petitions

by attaching predominately undated screenshots of messages from Savage.

The trial court conducted a joint hearing on the petitions. Kristen stated that her mother-in-law had made contact twenty times in the last six months, consisting of mostly negative comments. Rudy stated that his mother had contacted him fewer than fifty times in the past six months and that she continued to make Facebook posts about him. But Rudy also testified that he did not think Savage was threatening him.

Savage asserted that the allegations stemmed from family drama that should be resolved through counseling, not the court system. As to the allegation about Savage showing up at her granddaughter's ballet summer intensive, Kristen admitted that her daughter had finished her intensive before Savage's daughter began her intensive. Savage explained that she was visiting her mother in Pensacola and had enrolled her own daughter in a summer ballet intensive course during their visit.

The trial court granted both petitions and entered a final injunction for protection against stalking and a final injunction for protection from domestic violence against Savage. Savage timely moved for rehearing arguing that the evidence was legally insufficient to support the injunctions. The trial court denied the motion. This timely appeal follows.

*Standard of Review*

"We review the trial court's decision to enter the injunction for an abuse of discretion, but the question of whether the evidence is legally sufficient to justify the injunction is a question of law reviewed *de novo*." *Malone v. Malone*, 368 So. 3d 1057, 1058 (Fla. 1st DCA 2023).

*Analysis*

Injunctions against domestic violence and against stalking require proof of stalking. To obtain her injunction against stalking, Kristen had to prove that she was the victim of stalking. § 784.0485(1)(a), Fla. Stat. (2023). And Rudy had to show that he

3

was the victim of, or had reasonable cause to believe that he was in imminent danger of becoming the victim of, domestic violence. § 741.30(1)(a), Fla. Stat. (2023). Stalking is a form of domestic violence. § 741.28(2), Fla. Stat. (2023). Thus, both injunctions required proof of stalking. *Khan v. Deutschman*, 282 So. 3d 965, 967 (Fla. 1st DCA 2019) ("The stalking element is found not only in the dating violence injunctions, but also the domestic violence injunctions, the repeat violence injunctions, and more recently the standalone stalking injunction that was created by the Legislature. In each of these types of injunctions the legal analysis for the application of the stalking requirements is identical and in fact interchangeable although other requirements of the various injunctions are substantially different." (footnote omitted)).

"Stalking" occurs when a person "willfully, maliciously, and repeatedly follows, harasses, or cyberstalks another." § 784.048(2), Fla. Stat. (2023). The petitioner bears the burden to show "evidence of 'repeated acts' of 'following, harassment, or cyberstalking.'" *Hoover v. Peak*, 392 So. 3d 261, 263 (Fla. 1st DCA 2024) (quoting *Pickett v. Copeland*, 236 So. 3d 1142, 1144 (Fla. 1st DCA 2018)). The petitioner must also present competent, substantial evidence that a reasonable person would have suffered emotional distress from the repeated actions of the respondent. *Id.* Here, there was a lack of competent, substantial evidence of either requirement.

"Substantial emotional distress is evaluated by an objective standard, based on the totality of all circumstances, and is not easily suffered." *Kendrick v. Glover*, 315 So. 3d 159, 161 (Fla. 1st DCA 2021). Substantial emotional distress is more than "just an ordinary feeling of distress." *Shannon v. Smith*, 278 So. 3d 173, 175 (Fla. 1st DCA 2019). "It is not enough to be 'weirded out' or uncomfortable." *Klenk v. Ransom*, 270 So. 3d 1272, 1273 (Fla. 1st DCA 2019) (quoting *Paulson v. Rankart*, 251 So. 3d 986, 990 (Fla. 1st DCA 2018)); *see also Klemple v. Gagliano*, 197 So. 3d 1283, 1286 (Fla. 4th DCA 2016) (holding that the stalking statute did not allow a court to enter injunctions simply to keep the peace between neighbors who cannot get along and behave civilly towards each other).

4

To support their requests for injunctions, the Bustillos relied on these allegations: (1) Savage showed up at her son's workplace without an invitation; (2) Savage enrolled her daughter in the same ballet intensive as the Bustillos' daughter (Savage's granddaughter); (3) Savage repeatedly contacted the entire family by text or through social media; (4) Savage sent messages for the family through Kristen's mother; and (5) Savage continued to try to contact the family even after they sent her a certified letter asking her to cease and desist all contact.

None of the text messages in evidence were threatening. Kristen testified that Savage had tried to make contact about twenty times in the last six months, and Rudy agreed that there had been fewer than fifty attempts during that time. This court has found that the type of conduct described by the Bustillos would not cause a reasonable person to suffer substantial emotional distress. *See Ashford-Cooper v. Ruff*, 230 So. 3d 1283, 1283 (Fla. 1st DCA 2017) ("[T]here was no evidence that the repeated calls and texts Appellant made to Appellee to try to get in touch with her husband caused Appellee—or would cause a reasonable person in Appellee's position—substantial emotional distress."); *McMath v. Biernacki*, 776 So. 2d 1039, 1040–41 (Fla. 1st DCA 2001) (evidence that respondent had made several efforts to talk to petitioner and that she did not feel comfortable around him did not amount to stalking under a "reasonable person" standard); *see also Jones v. Jackson*, 67 So. 3d 1203, 1203–04 (Fla. 2d DCA 2011) (concluding that the appellant's threatening phone calls and text messages to the appellee, and his statements to third parties suggesting he would do violence to the appellee, would not have caused a reasonable person to suffer substantial emotional distress).

When applying the stalking statute, courts must be careful to avoid infringing on "another person's constitutionally protected freedom of association or free speech" or applying the statute "in an overbroad manner to reach non-malicious conduct." *Hoover*, 392 So. 3d at 265 (quoting *Brennan v. Syfrett*, 369 So. 3d 320, 323 (Fla. 1st DCA 2023)). Stalking injunctions come with serious consequences, including, as here, prohibiting the enjoined person from exercising their constitutional right to bear firearms.

At most, the Bustillos showed that they were uncomfortable around Savage. But their discomfort is not enough to support imposing an injunction. "As this court has noted, the stalking statutes authorizing protective injunctions are not designed to 'keep the peace' between neighbors 'who for whatever reason, are unable to get along and behave civilly toward each other.'" *Brennan v. Syfrett*, 369 So. 3d 320, 323 (Fla. 1st DCA 2023) (quoting *Paulson*, 251 So. 3d at 990). Savage's acts fail to support an objectively reasonable fear of the type of malicious behavior the statute was designed to protect against. *See Wills v. Jones*, 213 So. 3d 982, 985 (Fla. 1st DCA 2016).

Accordingly, we REVERSE the trial court's final judgments granting an injunction for stalking and an injunction against domestic violence against Savage and REMAND with instructions to dissolve both injunctions.

KELSEY and LONG, JJ., concur.

―――――――――――――――

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

―――――――――――――――

Kim A. Skievaski of Kim Anthony Skievaski, P.A., Pensacola, for Appellant.

Kristen Armista Bustillo, pro se, Appellee.

Rudy Bustillo, III, pro se, Appellee.